# IN THE COURT OF APPEALS OF IOWA

No. 17-0209
Filed February 7, 2018

**STATE OF IOWA,**
　　　Plaintiff-Appellee,

**vs.**

**MARCUS BANES,**
　　　Defendant-Appellant.
_____

Appeal from the Iowa District Court for Lee County, John G. Linn, Judge.


Defendant challenges his conviction and sentence for burglary, theft and ongoing criminal conduct. **CONVICTION AND SENTENCE VACATED AND REMANDED.**


Mark C. Smith, State Appellate Defender, and Maria L. Ruhtenberg, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Kelli A. Huser, Assistant Attorney General, for appellee.


Considered by Vaitheswaran, P.J., and Potterfield and McDonald, JJ.

**MCDONALD, Judge.**

Marcus Banes was charged with burglary, theft, criminal mischief, and ongoing criminal conduct arising out of a series of burglaries and thefts committed in Lee County in December of 2015. Following a jury trial, Banes was convicted of three counts of burglary in the third degree, in violation of Iowa Code sections 713.1 and 713.6A(1) (2015), one count of theft in the first degree, in violation of Iowa Code sections 714.1(1) and 714.2(1), two counts of theft in the second degree, in violation of Iowa Code sections 714.1(1) and 714.2(2), criminal mischief in the second degree, in violation of Iowa Code sections 716.1 and 716.4, and ongoing criminal conduct, in violation of Iowa Code sections 706A.1(5), 706.2(4), and 706A.4. In this appeal, Banes challenges the sufficiency of the evidence supporting some but not all of his convictions. He also contends the district court erred in allowing certain hearsay testimony or his trial counsel provided constitutionally deficient representation in failing to object to the hearsay testimony.

I.

We first address Banes's challenges to the sufficiency of the evidence. This court reviews challenges to the sufficiency of the evidence for the correction of legal error. *See State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012). Under this standard, we will affirm when the verdict is supported by substantial evidence. *See State v. Webb*, 648 N.W.2d 72, 75 (Iowa 2002). Evidence is substantial when the quantum and quality of evidence is sufficient to "convince a rational fact finder that the defendant is guilty beyond a reasonable doubt." *Id.* at 76. In conducting substantial-evidence review, this court considers the evidence in the light most favorable to the State, including all reasonable inferences that may be fairly drawn

from the evidence. *See id.* (citing *State v. Heard*, 636 N.W.2d 227, 229 (Iowa 2001)).

A.

Banes challenges the sufficiency of the evidence supporting two of the convictions for burglary in the third degree, his conviction for theft in the first degree, and his conviction for theft in the second degree. The challenged burglary convictions arise out of the unlawful entry into Benson Auto Shop and D & D Trailer and Sales. The challenged conviction for theft in the first degree arises out of the theft of tools and firearms from Benson Auto Shop. The challenged conviction for theft in the second degree arises out of the theft of cash, clothes, and purses from D & D Trailer and Sales. Banes does not challenge his convictions for burglary, theft, and criminal mischief arising out of the unlawful entry into the Lake Cooper Events Center.

The primary witness for the State was Banes's accomplice Devin Vawter. Vawter reached a favorable plea agreement with the State in which he received charging and sentencing concessions to resolve the charges in this case and other cases in exchange for his testimony at Banes's trial. According to Vawter, in the early morning of December 25, Vawter and Banes were driving around in Banes's Jeep "trying to find stuff to steal." They drove to D & D and decided to break in. They used bolt cutters to cut the padlock off a sliding door, entered the building, and stole cash, clothes, coats, and women's purses. After the D & D burglary, Banes drove to Benson Auto Shop. Vawter testified he climbed through a sliding window, entered the building, and opened the door for Banes. Vawter testified they stole whatever they could fit in Banes's Jeep. Vawter testified they took a

welder, plasma cutter, drills, tools, and some guns, among other things. Vawter and Banes made arrangements with Kendall Elder to sell the stolen goods to a third person. Banes drove himself and Vawter to an empty parking lot, and the sale was transacted. Vawter also testified he and Banes broke into the Lake Cooper Events Center. They walked up to the back door of the facility, broke the window, reached in through the broken window, unlocked the door, and entered the facility. Vawter testified there was a second door that they kicked in to gain entry into the building. Vawter and Banes took two flat screen televisions and some alcohol from the facility.

Vawter's testimony was corroborated by other evidence. *See* Iowa R. Crim. P. 2.21(3) ("A conviction cannot be had upon the testimony of an accomplice or a solicited person, unless corroborated by other evidence which shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof."). "Corroborative evidence need not be strong as long as it can fairly be said that it tends to connect the accused with the commission of the crime and supports the credibility of the accomplice." *State v. Barnes*, 791 N.W.2d 817, 824 (Iowa 2010).

Pete Benson and Amy Benson, the owners of Benson Auto, had heard from their son, Logan, that Banes may have been involved in the burglaries and that Banes was driving a gold Jeep Cherokee. Amy testified she knew of Banes, although it had been some time since she had seen him. In the first week of January, Pete and Amy were in Keokuk when Amy observed Banes and the gold Jeep Cherokee in the parking lot of an auto parts store. She testified she made

eye contact with Banes. Amy testified she and Pete followed Banes as he drove away from the store. She testified Banes "floored it" and she and Pete followed at a high rate of speed until they ultimately lost him. Amy testified she called 911 during the chase and advised the operator of their location during the chase. Police located the Jeep Cherokee within ten minutes of the car chase. It was abandoned near Banes's grandfather's residence. The Jeep contained items from Benson Auto and D & D. The vehicle was not registered to Banes; it had been reported stolen. Vawter testified he picked up Banes from Banes's grandfather's property after Banes abandoned the Jeep.

Forensic evidence supported Vawter's testimony. Vawter's fingerprints were found at the Benson Auto garage. The police found another set of prints at the garage, but they were not able to develop them. A tire impression was taken from outside Benson Auto. The impression was consistent with the tires on the Jeep Cherokee that Banes abandoned near his grandfather's residence. Vawter's footprint and Banes's palm print were found at the scene of the Lake Cooper burglary.

The recipients of the stolen property corroborated Vawter's testimony. The purchaser of the welder and plasma cutter testified Kendall Elder arranged the purchase. The purchaser testified Elder introduced the seller as "Marcus." The purchaser stated Banes was present at the time of the sale, and the purchaser identified Banes in court. The police retrieved the items from the purchaser. The serial numbers on the tools linked the tools to Benson Auto. Banes's girlfriend had several of the stolen purses from D & D.

When this evidence is viewed in the light most favorable to the jury's verdict, there is substantial evidence in support of the convictions. Vawter testified to Banes's role in the burglaries and thefts. Banes's palm print was found at the Lake Cooper facility, and Banes admitted to the crimes related to the Lake Cooper facility. Banes made arrangements to sell the property stolen from Benson Auto. The purchaser identified Banes as being present at the scene at the time of the sale. The Bensons identified Banes as the driver of a gold Jeep Cherokee, which was found abandoned minutes later and which contained stolen property. Banes gave stolen property to his girlfriend. The value of the stolen property was not in dispute, and the value exceeded the statutory threshold to support convictions. On this evidence, the jury reasonably could have found Banes guilty of burglary and theft. *See State v. Reuther*, No. 11-1334, 2012 WL 4097274, at *2 (Iowa Ct. App. Sept. 19, 2012) (stating "an inference of guilt based upon possession of recently stolen property may be sufficient to support a conviction if the evidence of record regarding the surrounding circumstances warrants a finding of guilt beyond a reasonable doubt"); *State v. Hall*, 371 N.W.2d 187, 190 (Iowa Ct. App. 1985) ("Finally, the jury could properly consider the relatively short period of time between the burglary and the sale of the property to the antique dealer as bearing upon the defendant's complicity in the burglary. Coupled with the evidence of a forced entry into the house, which would be a reasonable finding by a rational juror, it is apparent that the evidence of the circumstances surrounding defendant's possession of the recently stolen property, though circumstantial, is sufficient to permit the jury to infer that the defendant broke into the Peterson residence.").

Nonetheless, Banes contends there was insufficient evidence of his participation in the challenged burglaries and thefts. He contends his version of events was more credible. Banes contends Vawter was not credible because Vawter received charging and sentencing concessions for his testimony. Banes contends the Jeep Cherokee was Vawter's. Banes contends Amy Benson misidentified him. He contends the third party who purchased the tools was not credible. Banes testified he did not steal the purses in his girlfriend's possession but instead received them as gifts from Vawter. Banes testified at trial and told his version of events to the jury, and the jury rejected Banes's version of events. "Inherent in our standard of review of jury verdicts in criminal cases is the recognition that the jury [is] free to reject certain evidence and credit other evidence." *State v. Nitcher*, 720 N.W.2d 547, 556 (Iowa 2006). We will not disturb the jury's verdict regarding the challenged burglary and theft convictions.

B.

Banes also challenges the sufficiency of the evidence supporting his conviction for ongoing criminal conduct, in violation of Iowa Code sections 706A.1(5), 706A.2(4), and 706A.4. Where, as here, the jury was instructed without objection, the jury instruction becomes law of the case for the purposes of reviewing the sufficiency of the evidence. *See State v. Canal*, 773 N.W.2d 528, 530 (Iowa 2009) ("[Defendant] did not object to the instructions given to the jury at trial. Therefore, the jury instructions become the law of the case for purposes of our review of the record for sufficiency of the evidence."). The jury was instructed as follows:

Under Count IX of the Trial Information, the State must prove all of the following numbered elements of the crime of Ongoing Criminal Conduct:

1. On or about December 1 through December 30, 2015, in Lee County, Iowa, the defendant committed indictable offense, as defined in instruction No. 18G.
2. The indictable offenses were committed on a continuing basis
3. The indictable offenses were committed for financial gain.

Although these jury instructions are the law of the case for the purposes of this appeal, we independently note the instructions are a correct statement of Iowa law. Iowa Code section 706A.2(4) makes in "unlawful for a person to commit specified unlawful activity." The Code defines "specified unlawful activity" as "any act, including any preparatory or completed offense, committed for financial gain on a continuing basis, that is punishable as an indictable offense under the laws of the state in which it occurred and under the laws of this state." Iowa Code § 706A.1(5).[1]

At issue here is whether these offenses were committed on a "continuing basis." Given the similarity between the underlying purposes of RICO and Iowa Code chapter 706A, our supreme court has concluded the definition of "pattern of racketeering activity" by the United States Supreme Court is a reasonable one for "continuing basis" in section 706A.1(5). *State v. Reed*, 618 N.W.2d 327, 335 (Iowa 2000). The *Reed* court adopted the following definition:

---

[1] Iowa's ongoing-criminal-conduct statute is modeled after the federal Racketeer Influenced and Corrupt Organizations Act, commonly known as RICO, and the Ongoing Criminal Conduct Model Act. Iowa's statute has rightly been criticized as a significant expansion of criminal liability beyond that contemplated under RICO and the model act due to Iowa's broad definition of "specified unlawful activity." *See Westco Agronomy Co., LLC v. Wollesen*, ___ N.W.2d ___, ___, 2017 WL 6545853, at *12 n.3 (Iowa 2017); Anna T. Stoeffler, Note, *Iowa's State RICO Statute: Wreaking Havoc on Iowa's Criminal Justice System*, 102 Iowa L. Rev. 825, 841 (2017).

'Continuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition. It is, in either case, centrally a temporal concept—and particularly so in the RICO context, where *what* must be continuous, RICO's predicate acts or offenses, and the *relationship* these predicates must bear one to another, are distinct requirements. A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct. *Often a RICO action will be brought before continuity can be established in this way. In such cases, liability depends on whether the threat of continuity is demonstrated. Whether the predicates proved establish a threat of continued racketeering activity depends on the specific facts of each case.*

*Id.* at 334–35. "[A] continuing basis may be found, even where predicate acts occur over a short period of time, if there is a demonstrated relationship between the predicate acts and a threat of continuing criminal activity." *State v. Agee*, No. 02-0967, 2003 WL 22087479, at *2 (Iowa Ct. App. Sept. 10, 2003). "[T]he relationship element of a pattern can be shown if the predicate acts 'have the same or similar purposes, results, participants, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics and are not isolated events.'" *Reed*, 618 N.W.2d at 334 (citation omitted).

The most analogous case to this case is *State v. Harrington*, No. 08-2030, 2010 WL 2925696, at *3 (Iowa Ct. App. July 28, 2010). In that case, the defendant burglarized three homes in the early morning hours of a single day and stole a vehicle. *See Harrington*, 2010 WL 2925696, at *1. The evidence also showed the defendant was unemployed and living with various relatives. *See id.* at *3. The State contended the very nature of the burglaries proved there was a threat of repetition. *See id.* The State also contended the fact the defendant was not

employed showed the burglaries would have continued had the defendant not been arrested. *See id.* This court concluded these facts "without more" would not "fairly and reasonably support a legitimate inference there was a threat of continued unlawful activity." *See id.*

The facts of *Harrington* are materially indistinguishable. As in *Harrington*, there was not a series of related predicates over "a substantial period of time." Instead, we have several commercial burglaries committed over a period of a few days. *See Reed*, 618 N.W.2d at 335 ("Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement."); *cf. State v. Olsen*, 618 N.W.2d 346, 347 (Iowa 2000) (finding sufficient evidence of ongoing criminal conduct for theft by deception over nineteen months of one elderly couple); *State v. Friedley*, No. 01-1580, 2003 WL 1523343, at *5 (Iowa Ct. App. Mar. 26, 2003) (finding "there was evidence of theft over a period of several months, from December 1997 until February 1998, and that [the defendant] aided and abetted in this crime" is sufficient to convict for ongoing criminal conduct). As in *Harrington*, there is no evidence of a continued threat of future criminal conduct. Both Vawter and Banes testified at trial, and neither testified regarding any plan for future conduct. As in *Harrington*, we think the fact that the defendant was unemployed is insufficient evidence, in and of itself, to support the continuing-basis element.

Banes's conviction for ongoing criminal conduct is not supported by substantial evidence even when the evidence is viewed in the light most favorable to the jury's verdict. The conviction and sentence for ongoing criminal conduct must be vacated.

II.

Banes raises an evidentiary challenge. He argues the trial court erred by overruling a hearsay objection and/or that counsel was ineffective for failing to object and continue to object to hearsay. The challenged statements came from the three members of the Benson family—Logan, Amy, and Pete. All three were asked about rumors they had heard about the involvement of Banes in the burglary of their shop. Logan was asked "what was the name that was coming up," to which he replied "Marcus Banes." The prosecutor then asked who the source of the information was, at which point defense counsel objected "this is going into hearsay." The district court overruled the objection. Logan clarified the names of those who had told him and where the rumor originated. Pete Benson was asked without objection "did Logan tell you that he was hearing some street information about who might be involved" and "what was the name that kept coming up." He replied, "Marcus Banes." Amy Benson was asked similar questions establishing her knowledge of Banes and the rumors before discussing the car chase. Banes challenges the statements identifying Banes as the person involved in the burglaries.

We agree with the State that Banes's counsel failed to preserve error on the issue. Banes's counsel objected only to Logan's testimony identifying the source of Logan's information. No objection was made to out of court statements identifying Banes as the person involved in the burglaries. We will thus review the claims as claims of ineffective assistance of counsel. Ineffective assistance of counsel claims are reviewed de novo. *Everett v. State*, 789 N.W.2d 151, 158 (Iowa 2010).

To succeed on an ineffective assistance claim a defendant must show "(1) counsel failed to perform an essential duty; and (2) prejudice resulted." *State v. Maxwell*, 743 N.W.2d 185, 195 (Iowa 2008). "[W]e measure counsel's performance against the standard of a reasonably competent practitioner." *Id.* Poor strategy or mistakes in judgment normally do not rise to the level of ineffective assistance. *Ledezma v. State*, 626 N.W.2d 132, 143 (Iowa 2001). Prejudice exists if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Leckington*, 713 N.W.2d 208, 218 (Iowa 2006). Despite Banes's claims to the contrary, prejudice is not presumed under the framework of ineffective assistance even when inadmissible hearsay is admitted. *See State v. Reynolds*, 746 N.W.2d 837, 845 (Iowa 2008) ("If Reynolds's trial counsel had raised the meritorious hearsay objection to Best's testimony, there would have been insufficient evidence in the record for the court to find Reynolds guilty of the six forgery charges and the related theft charge. Accordingly, we conclude Reynolds has established a reasonable probability that the result of the trial would have been different but for his trial counsel's breach of duty."); *State v. Fillmer*, No. 01-0508, 2002 WL 1331892, at *1 (Iowa Ct. App. June 19, 2002) (finding no prejudice on hearsay claim). "[B]oth elements do not always need to be addressed. If the claims lack prejudice, it can be decided on that ground alone without deciding whether the attorney performed deficiently." *Ledezma*, 626 N.W.2d at 142.

"Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Iowa R. Evid. 5.801(c). "[W]hen an out-of-court statement is offered,

not to show the truth of the matter asserted but to explain responsive conduct, it is not regarded as hearsay." *See State v. Elliot*, 806 N.W.2d 660, 667 (Iowa 2011). "For a statement to be admissible as showing responsive conduct, however, it must not only tend to explain the responsive conduct but the conduct itself must be relevant to some aspect of the State's case." *State v. Mitchell*, 450 N.W.2d 828, 832 (Iowa 1990).

The challenged testimony is not hearsay. The statements were not offered for the truth of the matter asserted. Instead, the statements were made to show responsive conduct. Specifically, the testimony was offered to explain the Bensons' decision to follow Banes in a high-speed car chase. The car chase was relevant to the State's case in two respects. Amy identified Banes as the driver of the Jeep Cherokee. In addition, the Bensons' chase led to the immediate discovery of the vehicle. The vehicle contained property stolen from Benson Auto and from D & D. As discussed above, the accused's possession of burgled goods supports an inference that the accused was involved in the burglary. "We will not find counsel incompetent for failing to pursue a meritless issue." *State v. Brothern*, 832 N.W.2d 187, 192 (Iowa 2013).

Banes also has not established prejudice. Vawter testified extensively about the crimes and Banes's involvement in the same. Vawter's testimony was corroborated by forensic evidence. In addition, there was independent testimony tying Banes to the Jeep Cherokee minutes before the Jeep was found full of stolen goods. Another witness testified Banes sold him stolen goods. Banes gave his girlfriend two stolen purses for Christmas. In light of the overwhelming evidence of Banes's guilt, there is not a reasonable probability the result of the proceeding

would be different absent the challenged testimony. *See Leckington*, 713 N.W.2d at 218.

For the foregoing reasons, we reject Banes's evidentiary challenges and claims of ineffective assistance of counsel.

III.

We affirm Banes's convictions for burglary, theft, and criminal mischief. We vacate Banes's conviction and sentence for ongoing criminal conduct and remand this matter for entry of dismissal with prejudice of the charge.

**CONVICTION AND SENTENCE VACATED AND REMANDED.**