# IN THE COURT OF APPEALS OF IOWA

No. 17-1888
Filed November 21, 2018

**STATE OF IOWA,**
Plaintiff-Appellee,

**vs.**

**SEAN MICHAEL FREESE,**
Defendant-Appellant.
_____

Appeal from the Iowa District Court for Scott County, John D. Telleen, Judge.

Sean Freese appeals two convictions of first-degree murder and the sentences imposed. **CONVICTIONS AFFIRMED; SENTENCES VACATED IN PART AND REMANDED WITH DIRECTIONS.**

Mark C. Smith, State Appellate Defender, and Robert P. Ranschau, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Darrel Mullins, Assistant Attorney General, for appellee.

Considered by Vaitheswaran, P.J., and Doyle and Mullins, JJ.

**MULLINS, Judge.**

Sean Freese appeals two convictions of first-degree murder stemming from the deaths of his parents, Kevin and Donna Freese, and the sentences imposed. He challenges the sufficiency of the evidence to support his convictions and contends the district court erred in ordering him to pay a law-enforcement-initiative surcharge on each of the counts.

**I.      Background Facts and Proceedings**

Upon the evidence presented at trial, a reasonable jury could make the following factual findings. In October 2016, Sean was living with his parents in Davenport. On October 4, Sean and his girlfriend, Ellyott, hung out at the Freese residence. Kevin and Donna were present in the home at this time. Ellyott testified the atmosphere in the home was generally positive on this date, but there were underlying issues concerning Sean's schooling and his parents' desire that he move out. At approximately 11:22 p.m., Sean and Ellyott left the residence and got into Sean's vehicle, which was parked in the street in front of the Freese residence,[1] for the purpose of transporting Ellyott home. They departed shortly thereafter. After stopping at a fast food restaurant, Sean dropped Ellyott off at home around midnight.

At 11:57 p.m., Donna text messaged Sean and told him "to get home." At 12:03 a.m. on October 5, Donna texted, "Doors r locked." The surveillance footage shows Sean returned home seconds before 12:07 a.m. Less than a minute later,

---

[1] One of the Freeses' neighbors maintains surveillance cameras at his residence to record the area in the front of his home at all times. One of the surveillance camera's views includes the area in front of the Freese home where Sean regularly parks his vehicle.

Sean texted Donna, "Im here." Donna responded, "You're late." Sean responded, "Yea I know. I have school work to do. Unlock the door plz." Donna responded, "U r getting up in the morning and doing good school work." Over the next several minutes, Donna and Sean argued via text message about Sean's schedule, Donna taking issue with Sean "staying . . . up all night and sleeping 'til noon," and Sean retorting that getting up early makes him upset and "not wanting to do anything." Donna advised Sean, "If u want to live here u r going to keep normal hours. I'm tired of being sleep deprived so u can do what u want when u want" and "U need to learn to do what's asked of u not just what u want to do."

The surveillance camera footage shows that at roughly 3:40 a.m., Sean[2] approached his vehicle from the direction of the home, opened the back hatch of the vehicle, removed a long dark object from the vehicle, and proceeded back to the house with it. Sean's best friend testified at trial that Sean often kept his AR-15-type rifle secured in a case in his vehicle.

At approximately 3:55 a.m., one of the Freeses' neighbors was awoken by what she thought were gunshots coming from the direction of the Freese residence, which is located directly behind her home. At this time, Sean's vehicle was still parked in front of the Freese residence. The neighbor looked out her bedroom window which faces the back of the Freese residence and noticed most of the lights in the Freese home were illuminated. The neighbor monitored the

---

[2] Although the surveillance footage is blurry and does not positively identify Sean, upon the other evidence presented, a reasonable jury could conclude that Sean is the person depicted in the footage at all times.

Freese residence for several minutes and observed someone calmly moving about the house.

The surveillance footage shows that at roughly 4:07 a.m., Sean returned to his vehicle, placed something in its rear, and then got in the vehicle and drove away. Sean returned to the Freese home about a minute later and parked in the driveway; he departed from the residence in his vehicle again at 4:13 a.m. Sean returned to the home at 4:16 a.m., parked his vehicle in front of the home, exited the vehicle and proceeded in the direction of the Freese residence. At 4:18 a.m., Sean returned to the vehicle and drove away. At 4:26 a.m., Sean, alone and in his vehicle, visited a nearby fast food restaurant's drive through. Sean returned to the Freese residence at 4:41 a.m. At this time, Sean began to approach the home, but then returned to the vehicle, opened the back hatch, removed a long item, and proceeded to the residence with it.

At approximately 4:46 a.m., Sean called 911. He reported he recently left his house to go for a drive and stop by a fast food restaurant, pursuant to which he was gone from his home for about an hour and a half. When he returned home, he found his gun lying on the floor, noticed the back door partially open, and then went upstairs and found both of his parents shot and not breathing. Sean noted he was not concerned that an assailant was in the home.

Officers were promptly dispatched to the residence. Upon arrival at 4:53 a.m., officers discovered Sean sitting on the front steps of the home, crying. Sean advised the first officer on scene that his parents were located in an upstairs bedroom. Officers entered the home, and observed an AR-15-style semiautomatic rifle lying on the floor near the stairs leading to the second level of the home. The

firearm belonged to Sean. Located near the rifle was a black rifle case, laying open, which contained an empty rifle magazine. Officers proceeded to the master bedroom and discovered Donna lying on the bed and Kevin lying face down on the floor, both having sustained multiple gunshot wounds. Subsequent autopsies identified Kevin and Donna's cause of death as multiple gunshot wounds and revealed Kevin sustained three or four[3] gunshot wounds and Donna sustained five. The bedroom was riddled with shell casings. Sean was transported to the local police station for questioning and was interviewed by a detective later that morning. At the conclusion of the interview, the detective advised Sean to consider himself under arrest.

At 7:19 p.m., Sean called a close friend from jail. During this call, Sean advised, "We got in a huge argument and I snapped, that was it." Sean explained the argument was "about them and their rules and everything they're putting me through," noting "they were treating [him] poorly last night," and he "just couldn't take it." Sean also explained to his friend that he was originally going to take his own life, but then decided to go get his gun, shoot his parents, and then shoot himself, but only "half of that worked out." Sean called his friend again on October 6 at 8:42 a.m. During this call, Sean repeated that he "just snapped."

The State charged Sean with two counts of first-degree murder. The matter proceeded to a jury trial. At the close of the State's case-in-chief, Sean moved for judgment of acquittal as to both counts, arguing the evidence was insufficient to show he acted with malice aforethought, deliberately, premeditatedly, or with the

---

[3] The medical examiner testified two of the gunshot wounds may have been caused by a single projectile.

specific intent to kill. The court denied the motion. The jury found Sean guilty as charged. Sean appealed following the imposition of sentence.

## II.     Standard of Review

Sean challenges the sufficiency of the evidence to support his convictions and contends the district court erred in ordering him to pay a law-enforcement-initiative surcharge on each of the counts. Challenges to the sufficiency of the evidence are reviewed for corrections of errors at law. *State v. Kelso-Christy*, 911 N.W.2d 663, 666 (Iowa 2018). The court views "the evidence 'in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence.'" *State v. Ortiz*, 905 N.W.2d 174, 180 (Iowa 2017) (quoting *State v. Huser*, 894 N.W.2d 472, 490 (Iowa 2017)). All evidence is considered, not just that of an inculpatory nature. *See Huser*, 894 N.W.2d at 490. "[W]e will uphold a verdict if substantial evidence supports it." *State v. Wickes*, 910 N.W.2d 554, 563 (Iowa 2018) (quoting *State v. Ramirez*, 895 N.W.2d 884, 890 (Iowa 2017)). "Evidence is substantial if, 'when viewed in the light most favorable to the State, it can convince a rational jury that the defendant is guilty beyond a reasonable doubt.'" *Id.* (quoting *Ramirez*, 895 N.W.2d at 890). We likewise review non-constitutional challenges to a sentence as illegal for correction of errors at law. *Noll v. Iowa Dist. Ct.*, ___ N.W.2d ___, ___, 2018 WL 5090781, at *2 (Iowa 2018).

## III.    Analysis

### A.     Sufficiency of the Evidence

The State bears the burden of proving every element of the charged crimes. *State v. Armstrong*, 787 N.W.2d 472, 475 (Iowa Ct. App. 2010). Sean does not challenge any of the jury instructions employed in his trial. As such, the jury

instructions are the law of the case for purposes of reviewing the sufficiency of the evidence. *See State v. Banes*, 910 N.W.2d 634, 639 (Iowa Ct. App. 2018).

The jury was instructed the State was required to prove the following elements of murder in the first degree as to the deaths of both Donna and Kevin:

> 1. On or about October 5, 2016, the defendant shot [the victim].
> 2. [The victim] died as a result of being shot.
> 3. The Defendant acted with malice aforethought.
> 4. The Defendant acted willfully, deliberately, premeditatedly and with a specific intent to kill [the victim].

Sean does not challenge the sufficiency of the evidence as to whether he shot his parents or his parents died as a result. He only challenges the sufficiency of the evidence on the third and fourth elements of the crimes.

On the element of malice aforethought, the jury was instructed as follows:

> "Malice" is a state of mind which leads one to intentionally do a wrongful act to the injury of another out of actual hatred, or with an evil or unlawful purpose.
> Malice may be established by evidence of actual hatred, or by proof of a deliberate or fixed intent to do injury.
> Malice may be found from the acts and conduct of the defendant, and the means used in doing the wrongful and injurious act.
> Malice requires only such deliberation that would make a person appreciate and understand the nature of the act and its consequences, as distinguished from an act done in the heat of passion.
> "Malice aforethought" is a fixed purpose or design to do some physical harm to another which exists before the act is committed. It does not have to exist for any particular length of time.

As to the fourth element, the jury was instructed:

> "Willful" means intentional or fixed by design or purpose and not accidental.
> "To deliberate" is to weigh in one's mind, to consider, to contemplate, or to reflect.
> "Premediate" is to think or ponder upon a matter before acting.

Deliberation and premeditation need not exist for any particular length of time before the act.

The jury was additionally instructed the following:

If a person has the opportunity to deliberate and uses a dangerous weapon against another resulting in death, you may, but are not required to, infer that the weapon was used with malice, premeditation and specific intent to kill.
. . . .
Malice aforethought may be inferred from the Defendant's use of a dangerous weapon.
. . . .
You are instructed that a firearm is, by law, a dangerous weapon.

Sean argues the evidence on the third and fourth elements was lacking because the atmosphere in the Freese home was calm around the time of the commission of the crimes and the fact that he "just snapped" defeats any finding that he acted with malice aforethought, deliberately, premeditatedly, or with the specific intent to kill.

The evidence shows that between around midnight and 3:40 a.m. on October 5, 2016, Sean and his parents got into a "huge argument." As a result of this argument, Sean "snapped, that was it," he "just couldn't take it." Sean then contemplated. He thought about taking his own life, but then he decided to go get his gun and shoot his parents. Sean exited the home to retrieve his gun from his car at 3:40 a.m. and then returned to the home. Sean shot his parents in their bedroom fifteen minutes later.

Applying the jury instructions as the law of the case and viewing the evidence in the light most favorable to the State, we find the evidence was sufficient to show Sean acted with malice aforethought, willfully, deliberately, premeditatedly, and with the specific intent to kill. The jury was allowed to infer

malice aforethought, premeditation, and a specific intent to kill upon the undisputed fact that Sean used a firearm against his parents. Those inferences are strengthened by the fact that Sean inflicted eight or nine gunshot wounds between his parents. Sean's statements in his jailhouse phone call to a close friend show that Sean contemplated his actions beforehand, made the choice to shoot his parents, retrieved his firearm from his vehicle, and then effectuated his choice.

Because the evidence was sufficient to support the challenged elements of the crimes of first-degree murder, we affirm Sean's convictions.

B. Sentencing

Sean contends the district court erred in ordering him to pay a law enforcement initiative surcharge on each of the counts. The State concedes error. *See* Iowa Code § 911.3 (2016). We vacate the law-enforcement-initiative surcharges and remand for entry of a corrected sentencing order.

IV. **Conclusion**

We affirm Sean's convictions of murder in the first degree. We vacate the law-enforcement-initiative surcharges and remand for entry of a corrected sentencing order.

**CONVICTIONS AFFIRMED; SENTENCES VACATED IN PART AND REMANDED WITH DIRECTIONS.**