# IN THE COURT OF APPEALS OF IOWA

No. 20-1151
Filed August 18, 2021

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**JEFFREY LEE FRAZIER,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Woodbury County, John D. Ackerman, Judge.

Jeffrey Frazier appeals his convictions for forgery and identity theft. **AFFIRMED.**

Martha J. Lucey, State Appellate Defender, and Rachel C. Regenold, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Martha E. Trout, Assistant Attorney General, for appellee.

Considered by Mullins, P.J., May, J., and Doyle, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2021).

**MAY, Judge.**

Jeffrey Frazier challenges the sufficiency of the evidence supporting his convictions for forgery and identity theft.[1]  We affirm.

Frazier's appellate brief provides a fair summary of the evidence:

> On June 24, 2019, [a] teller . . . was working the drive-up window [at] . . . Liberty National Bank when two men presented a check to cash on [the] account [of M.T.]  The driver, later identified as . . . Frazier, said [to the teller], "I have a check that needs to be cashed."  [The teller] was suspicious because [Frazier] drove past her drawer at the drive-up window.  Usually drivers do that because their window won't open or a backseat passenger will be conducting the transaction.  Neither was the case here because Frazier's window was already down and the only passenger, later identified as Marquise Fields, was in the front.
> [Frazier provided the teller with a check and] a [government] ID for [a woman whose initials are A.L.]  The ID included [A.L.'s] name, address, and date of birth.  It was difficult for [the teller] to see the passenger due to the tinted windows, but it appeared to be a man with mirrored sunglasses and a square jaw, though his hair was pulled back like the woman in the ID photo.
> The check was written on [M.T.'s] Liberty National Bank account to [A.L.] . . . in the amount of $780.00.  The check included [M.T.'s] name, address, telephone number, and account information.
> [M.T.] had closed this account after her checkbook was stolen during a car burglary in 2017.  [M.T.] is also employed by Liberty National Bank . . . .
> When [the teller] entered the account information from the check, it didn't show anything because it was written on an employee's bank account.  The handwriting didn't look like [M.T.]'s though because it had "way too much slant."
> [The teller] showed the check to [M.T.] in her office; [M.T.] told [the teller], "No, that's not valid.  I closed that account because those checks had been stolen."  [M.T.] denied writing the check or knowing

---

[1] Frazier attempts to raise additional, unpreserved errors by claiming ineffective assistance of counsel.  But Iowa Code section 814.7 (2020) prohibits us from considering ineffective-assistance claims on direct appeal.  And we reject Frazier's constitutional challenges to section 814.7.  *See, e.g.*, *State v. Tucker*, 959 N.W.2d 140, 147 (Iowa 2021) (holding section 814.7 does not violate equal protection or separation-of-powers).  We also reject Frazier's invitation to adopt "plain error"—a doctrine our supreme court has firmly rejected.  *State v. Treptow*, 960 N.W.2d 98, 109 (Iowa 2021) ("We have repeatedly rejected plain error review and will not adopt it now.").

[A.L.]. [M.T.] did not speak with or know . . . Fields or . . . Frazier; she had not given either man permission to use her check.

When [the teller] returned to Frazier and Fields at the drive-up window, the car was inching forward and Frazier looked "a little agitated." Frazier said, "We're just going to come inside and cash it." But no one came inside the bank. The check and ID were left behind. The entire transaction took about four minutes.

The bank is equipped with video surveillance that recorded the transaction. There is no audio. Because of its position, the video captured a different angle than what [the teller] saw . . . at the drive-up window that day. The video showed Frazier handing the pen to Fields, who did something with the pen—it's unclear due to a "skip" in the video—and Fields handed the check to Frazier, who deposited it in the drawer, followed by an ID.

[M.T.] made a police report. Sioux City Police Detective Jason Braunschieg was assigned to follow up on this investigation. He located [B.F.], the registered owner of the vehicle used by Frazier; [B.F.] loaned [the vehicle] to Frazier on June 24, 2019 . . . .

Braunschieg also spoke with [A.L.], who indicated that she had lost her purse at some point. She was able to retrieve her purse from . . . Fields at his home when she heard he had it. [But A.L.'s government] ID was no longer in her purse. The officer determined [A.L.] was a victim in this case, not a suspect.

(Internal record citations omitted.)

In light of these facts, Frazier does not dispute that *Fields* committed the crime of forgery by fraudulently "mak[ing], complete[ing], execut[ing], authenticat[ing], issu[ing], or transfer[ing] a writing [namely, M.T.'s stolen check] so that it purports to be the act of another [namely, M.T.] who did not authorize that act." Iowa Code § 715A.2(1)(b) (2019). Nor does Frazier dispute that *Fields* committed identify theft by fraudulently using other people's "identification information"[2]—namely, M.T.'s name and other personal information on her check,

---

[2] Section 715A.8 states

"identification information" includes but is not limited to the name, address, date of birth, telephone number, driver's license number, nonoperator's identification card number, social security number, student identification number, military identification number, alien identification or citizenship status number, employer identification

as well as A.L.'s name and likeness on her government ID—with "the intent to obtain credit, property, services, or other benefit." *Id.* § 715A.8(2). But Frazier claims there is not sufficient evidence to show *he* was involved with Fields's crimes, either as a principal or an aider and abettor.[3]

We review "challenges to the sufficiency of the evidence for the correction of legal error." *State v. Banes*, 910 N.W.2d 634, 637 (Iowa Ct. App. 2018). We view the "the evidence in the light most favorable to the State." *Id.* We consider "all reasonable inferences that may be fairly drawn from the evidence." *Id.* "Direct and circumstantial evidence are equally probative." *State v. Lilly*, 930 N.W.2d 293, 308 (Iowa 2019) (citation omitted).

The evidence here would allow the jury to conclude that Frazier (1) borrowed a car; (2) drove the car to the bank; (3) brought Fields with him, as well as a check stolen from M.T. and an ID stolen from A.L.; (4) drove the car to the teller's window; (5) pulled the car *beyond* the teller's window, apparently[4] in an

---

number, signature, electronic mail signature, electronic identifier or screen name, biometric identifier, genetic identification information, access device, logo, symbol, trademark, place of employment, employee identification number, parent's legal surname prior to marriage, demand deposit account number, savings or checking account number, or credit card number of a person.

[3] As Frazier explains in his brief: "The evidence supports that Fields acted alone in committing these crimes. Frazier was merely in proximity to his passenger, who was committing [f]orgery and [i]dentity [t]heft without Frazier's knowledge."

[4] The teller testified as follows:

Q. What does that mean when you say drove past your window? A. My—well, my drawer is directly in front of me that I put out for them to do their transactions . . . . So he drove up past—my camera . . . . So first thing I thought of . . . two reasons people will drive up and go past that drawer, either their window won't go down so they're going to open their door—his window was already down— or there's a passenger in the back seat doing a transaction, and I

effort to avoid video surveillance; (6) told the teller, "I have a check that needs to be cashed"; (7) reached back to the teller's drawer to retrieve a pen; (8) handed the pen to Fields, who wrote the check out to appear as if it had been written from M.T. to A.L.; (9) placed the forged check—and A.L.'s stolen ID—in the teller's drawer; (10) waited with Fields to see if the teller would cash the forged, stolen check; and (11) displayed a nervous demeanor while waiting. Then, when the teller returned, Frazier blurted out: "We're just going to come inside and cash it." But instead of going inside, Frazier drove away, leaving behind the check and government ID.

From these facts, a jury could reasonably conclude Frazier committed forgery by fraudulently "transfer[ing] a writing"—M.T.'s check—"so that [the writing] purports to be the act of another [namely, M.T.] who did not authorize that act." *See* Iowa Code § 715A.2(1)(b).[5] In addition, a jury could reasonably conclude Frazier committed identity theft against M.T. and A.L. by "fraudulently us[ing] or attempt[ing] to fraudulently use" their "identification information with the intent to obtain" money.

---

saw nobody in the back seat. So I believed he was trying to avoid my camera.

[5] "Where, as here, the jury was instructed without objection, the jury instruction becomes law of the case for the purposes of reviewing the sufficiency of the evidence." *Banes*, 910 N.W.2d at 639. Frazier's brief does not address whether the evidence was sufficient to fulfill the requirements stated in the jury instructions. Instead, his sufficiency argument focuses entirely on statutes and caselaw. Here, we have elected to follow Frazier's lead. But we could have instead rejected Frazier's sufficiency challenge on its face because he provided no argument that the evidence was insufficient *under the law governing the case*, namely, the law stated in the jury instructions. *See id.*; *see generally State v. Gibbs*, 941 N.W.2d 888, 902 (Iowa 2020) (McDonald, J., concurring specially) (discussing waiver through failure to develop an argument).

Likewise, the jury could reasonably conclude Frazier aided and abetted Fields in committing these same crimes. "We will sustain an aiding-and-abetting conviction if the record contains 'substantial evidence the accused assented to or lent countenance and approval to the criminal act either by active participation or by some manner encouraging it prior to or at the time of its commission.'" *See Lilly*, 930 N.W.2d at 308 (citation omitted). As explained, there is substantial evidence that Frazier actively participated in the forgery by presenting the forged, stolen check to the bank as if it were genuine and legitimate. There is also substantial evidence that he actively participated in identity theft by using M.T.'s check and A.L.'s government ID in a fraudulent scheme to obtain cash.

Yet Frazier maintains there is no evidence he knew he was committing any crime. Although he helped Fields process a banking transaction, Frazier claims he had no idea the transaction, the check, or the ID were fraudulent. *See State v. Lewis*, 514 N.W.2d 63, 66 (Iowa 1994) ("It is true the State must prove the accused knew of the crime at or before its commission."). But the evidence would have allowed the jury to conclude otherwise. A jury could properly reason that if Frazier didn't know he was participating in crimes, he would have had no reason to awkwardly position the car in an effort to avoid video surveillance. And there would have been no reason for him to be nervous while waiting for the teller. And there certainly would have been no reason to drive away from the bank—to flee—without retrieving the check or receiving any cash in return for the check.

Substantial evidence supports the jury's verdicts. We affirm.

**AFFIRMED.**