# IN THE COURT OF APPEALS OF IOWA

No. 24-1151
Filed August 20, 2025

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**ROMELL DAVON ENOCH,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Dubuque County, Michael J. Shubatt, Judge.

        The defendant challenges the sufficiency of the evidence supporting his conviction for first-degree murder.  **AFFIRMED.**

        Raya D. Dimitrova of Carr Law Firm, P.L.C., Des Moines, for appellant.

        Brenna Bird, Attorney General, and Anagha Dixit, Assistant Attorney General, for appellee.

        Considered without oral argument by Tabor, C.J., and Greer and Buller, JJ.

**GREER, Judge.**

A jury found Romell Enoch guilty of first-degree murder in the death of Kylie Duster. Enoch appeals, arguing there is insufficient evidence to support his conviction regarding the elements he acted with premeditation and had the specific intent to cause the death. He maintains the evidence established Duster died after he assaulted her following serious provocation, which makes him guilty of voluntary manslaughter—not first-degree murder.

We review "challenges to the sufficiency of the evidence for the correction of legal error." *State v. Banes*, 910 N.W.2d 634, 637 (Iowa Ct. App. 2018). "[W]e . . . affirm when the verdict is supported by substantial evidence." *Id.* "Evidence is substantial when the quantum and quality of evidence is sufficient to 'convince a rational fact finder that the defendant is guilty beyond a reasonable doubt.'" *Id.* (citation omitted). In conducting our review, we do not resolve conflicts in the evidence, decide the credibility of witnesses, or weigh the evidence—those decisions are for the factfinder. *See State v. Musser*, 721 N.W.2d 758, 761 (Iowa 2006). Instead, we consider the evidence in the light most favorable to the verdict, "including all reasonable inferences that may be fairly drawn from the evidence." *Banes*, 910 N.W.2d at 637. That said, "[a]ll evidence is considered, not just that of an inculpatory nature." *State v. LuCore*, 989 N.W.2d 209, 215 (Iowa Ct. App. 2023).

The State bears the burden of proving every element of the charged offense. *State v. Armstrong*, 787 N.W.2d 472, 475 (Iowa Ct. App. 2010); *see also State v. Schiebout*, 944 N.W.2d 666, 671 (Iowa 2020) ("Jury instructions, when not objected to, become the law of the case for purposes of appellate review for

sufficiency-of-evidence claims."). For Enoch to be properly convicted of first-degree murder, the State had to prove all of the following:

> 1. On or about July 25, 2021, Defendant Romell Enoch assaulted Kylie Duster in [her apartment] in Dubuque, Iowa.
> 2. Kylie Duster died as a result of being assaulted.
> 3. [Enoch] acted with malice aforethought.
> 4. [Enoch] acted willfully, deliberately, premeditatedly, and with a specific intent to kill Kylie Duster.

Enoch concedes that he assaulted Duster and that she died because of that assault—he maintains the evidence does not prove beyond a reasonable doubt that he acted with premeditation and with the specific intent to kill her. Instead, Enoch contends substantial evidence establishes that he committed voluntary manslaughter, which includes the following elements:

> 1. On or about July 25, 2021, Defendant Romell Enoch assaulted Kylie Duster in [her apartment] in Dubuque, Iowa.
> 2. Kylie Duster died as a result of being assaulted.
> 3. The assault was done solely by reason of sudden, violent and irresistible passion resulting from serious provocation.

The court further instructed the jury that "serious provocation" is

> conduct that would cause a reasonable person to have a sudden, violent and irresistible passion.
> Passion is not sudden, violent, and irresistible if there is an interval of time during which a reasonable person would, under the circumstances, have time to reflect and bring his passion under control and suppress the impulse to kill.
> Words alone, however abusive or insulting, cannot be serious provocation.

At trial, the State presented evidence that Duster and Enoch first met on social media in July 2021. After exchanging a few messages, the two met up on Friday, July 23. From Friday to Sunday, Enoch and Duster spent time together around Dubuque—they were captured on video by various traffic cameras and on a personal surveillance camera at Duster's aunt's home. They were last seen on

camera at approximately 9:41 p.m. on Sunday as they left a local gas station and proceeded to Duster's apartment. According to Enoch's statement to the police, the two had sex and then started fighting—Enoch's girlfriend, D.B.,[1] called and sent messages repeatedly while Enoch and Duster were engaged in intercourse, which upset Duster. During the argument that followed, Duster annoyed Enoch by putting her hands in his face and poking him. Then she swung her fist at him without making contact. Enoch responded by hitting Duster, which caused her to fall to the floor. With Duster on the floor and Enoch above her, he continued to hit her—about ten times—and then he put his hands around her throat and "choked her" for a couple minutes. Duster went limp while Enoch strangled[2] her. Then Enoch put a T-shirt in Duster's mouth, wrapped a blanket around her, and "tried to hide the body" by shoving it in the bedroom closet. Enoch left in Duster's car; at 11:52 p.m., he was recorded on a traffic camera driving to pick up D.B. in Duster's vehicle.

Over the next few days, Enoch continued to drive Duster's car around Dubuque. Eventually, he bought gold spray paint and painted the vehicle. Friends and family of Duster started reaching out to Enoch to ask questions about her whereabouts; he repeatedly reported she left town with a man in a white Jeep.

---

[1] The girlfriend was seventeen years old at the time.

[2] We use the word "choke" because that word appears in the record. But, we note the correct terminology would be "strangled" given the description of the act through witness testimony and the exhibits. *See* Mary Pat Gunderson, *Gender and the Language of Judicial Opinion Writing*, 21 Geo. J. Gender & L. 1, 11 (2019) (discussing that language matters and noting that describing acts of strangulation as "choking" can minimize or mitigate the perpetrator's actions).

Meanwhile, Enoch told D.B. that he bought the car for her to replace her vehicle that he had crashed a couple of weeks earlier.

Police officers found Duster's body on Wednesday, July 28 while conducting a welfare check in her apartment. The Deputy State Medical Examiner performed an autopsy; he certified that Kylie's death was caused by suffocation. At trial, the medical examiner testified that suffocation is "simply the blockage of the airway"; it "is a state where oxygen cannot reach the blood. Examples of suffocation would include smothering where a hand is over the mouth. It can include things like choking where food is in the airway."[3] Death by suffocation takes "a few minutes, potentially longer." While the medical examiner noted Duster was found dead with a T-shirt stuffed in her mouth, he agreed the material was not shoved down into her throat, but he could not determine from the autopsy whether the T-shirt was placed in her mouth before or after her death. Later testing of the T-shirt revealed Enoch's DNA on it.

Enoch does not dispute these facts. He argues they establish that he assaulted Duster—leading to her death—only after their argument turned into a physical altercation, which he contends was serious provocation. Enoch maintains his assaultive actions were a reaction to the fight Duster started rather than the result of preparation, a plan, or the intent to murder her. But we have little trouble concluding substantial evidence supports the jury's verdict.

---

[3] The medical examiner distinguished strangulation and suffocation. While suffocation is caused by lack of oxygen, "[s]trangulation typically involves hands around the neck area. And when you do that, you block the blood vessels which return blood from the head and blood going to the head."

First, a rational jury could have found that Enoch hatched a long-term plan to kill Duster and take her car. The evidence at trial showed that sometime before Enoch reached out to Duster on social media, he crashed D.B.'s car and told her he would get her a new one. Then, even though he was living with D.B., Enoch generally disappeared from her life from Friday, July 23 when he met up with Duster until he picked up D.B. in Duster's vehicle late Sunday night on July 25. D.B. repeatedly called and sent messages to Enoch over the three days they were apart, and he responded to a few of them. At 3:45 p.m. on Sunday, D.B. sent a message to Enoch, saying, "You're cheating I'm not dumb." Enoch responded, "No I'm not." In a series of messages, D.B. sent, "Then wtf are you doing"; "So why can't you answer []then"; "Why haven't you been home ?"; "Huh?"; "Answer that or I'm done with you"; "Fr";[4] "If you're not there within the next hour IM DONE WITH YOU FRFR." At 3:48 p.m., while he was with Duster, Enoch responded, "I'm finessing somebody frfr honesty." He told D.B. he could not answer the phone, asked her to "[t]rust [him]," and said, "If I'm not back by 730 then I'll leave u alone but just let me do this." Enoch told D.B., "I love u I got u." Later, he sent her messages stating that he missed her and agreed that they would see each other in a few hours. D.B. continued to send messages asking Enoch to pick her up. And Enoch did—in Duster's car, which he told D.B. was for her.

Second, even if the jury did not find Enoch had a long-term plan to kill Duster, it still could have concluded that he premeditated and formed the specific intent to kill during the drawn-out physical altercation. *See State v. Buenaventura*,

---

[4] The testimony showed that "Fr" means "for real."

660 N.W.2d 38, 48 (Iowa 2003) (recognizing that premeditation means "to think or ponder upon a matter before acting" and that it "need not exist for any particular length of time before the homicidal act"). In Enoch's statement to the police, he admitted hitting Duster, which knocked her to the ground. After that, he got on top of her and hit her approximately ten more times before proceeding to strangle her for a couple minutes. Even after she went limp while he strangled her with his hands, Enoch stuffed a T-shirt into Duster's mouth. Then Enoch hid Duster's body by shoving it into the closet.

The medical examiner's testimony corroborated that death by suffocation is not instantaneous; he proffered that it would take "a few minutes, potentially longer." *See id.* at 49 (finding an argument of only two or three minutes provided the defendant "an opportunity to think about what he was doing" such that premeditation was shown). Plus, the jury could consider "the nature of the crime and the defendant's actions afterwards" when determining whether the State proved premeditation. *See id.* In *Buenaventura*, our supreme court concluded that the decedent being "brutally beaten" and the defendant's action of "hid[ing] the victim's body" was substantial evidence "that what happened was no accident or defensive reaction by the defendant; it was something [he] thought about before inflicting the fatal blows." *Id.* And the same evidence also established that Enoch had the specific intent to kill Duster—a reasonable jury could conclude that strangling Duster for a couple minutes, until the point she went limp, and then proceeding to stuff a T-shirt in her mouth showed Enoch intended to kill her. *See State v. Ernst*, 954 N.W.2d 50, 55 (Iowa 2021) (recognizing "[s]pecific intent is

seldom capable of direct proof" and "will often 'be shown by circumstantial evidence and the reasonable inferences drawn from'" it (citation omitted)).

Finally, while Enoch urges us to conclude the evidence established he was seriously provoked into committing the deadly assault, we are not convinced the actions he attributed to Duster meet the legal standard of "serious provocation." In *State v. Thompson*, our supreme court affirmed the district court's decision not to instruct the jury on the lesser-included offense of voluntary manslaughter because evidence of serious provocation was insufficient. 836 N.W.2d 470, 476 (Iowa 2013). The supreme court concluded, "The evidence of serious provocation in this case—that [the decedent] slapped [the defendant] and flipped him off before he shot her—was insufficient to submit a voluntary manslaughter instruction." *Id.* Here, in his statement to police officers (which was videotaped and played for the jury), Enoch claimed that Duster put her hand in his face and poked him in the face before she swung her fist, which missed.[5]

Even if we assume the jury credited Enoch's statements about what led him to hit and choke Duster, *see State v. Nitcher*, 720 N.W.2d 547, 556 (Iowa 2006) ("Inherent in our standard of review of jury verdicts in criminal cases is the recognition that the jury was free to reject certain evidence, and credit other evidence." (citation omitted)), we do not think these actions reach the objective standard of serious provocation, *see Thompson*, 836 N.W.2d at 478. Yet, no one objected to the voluntary manslaughter instruction, so on our review, we have little

---

[5] Duster later scratched Enoch, but this did not take place until he was on top of her, hitting and strangling her.

trouble concluding that there is not substantial evidence Enoch committed voluntary manslaughter.

Because substantial evidence supports the jury's determination that Enoch committed first-degree murder in the killing of Kylie Duster, we affirm.

**AFFIRMED.**