# IN THE COURT OF APPEALS OF IOWA

---

No. 24-1934
Filed April 15, 2026

---

**State of Iowa,**
Plaintiff–Appellee,

v.

**Alexander Mitchell Padilla,**
Defendant–Appellant.

---

Appeal from the Iowa District Court for Hancock County,
The Honorable Colleen Weiland, Judge.

---

**AFFIRMED**

---

Tiffany Kragnes, West Des Moines, attorney for appellant.

Brenna Bird, Attorney General, and Zachary Miller, Assistant Attorney
General, attorneys for appellee.

---

Considered without oral argument
by Greer, P.J., and Schumacher and Chicchelly, JJ.
Opinion by Greer, P.J.

**GREER, Presiding Judge.**

An adage warns against engaging in futile disputes: "[N]ever . . . wrestle with a pig. You get dirty, and besides, the pig likes it." Pamela Bucy Pierson et al., *Stress Hardiness and Lawyers*, 42 J. Legal Pro. 1, 14 (2017). Alexander Padilla appeals his convictions for attempted murder and willful injury resulting in serious injury. The charges arose after Padilla went to his neighbor's property to retrieve his pet pig and ultimately shot his neighbor during a dispute. On appeal, Padilla challenges the sufficiency of the evidence, arguing the State failed to prove by sufficient evidence that his actions were not justified. Upon our review, we affirm.

## I. Background Facts and Proceedings.

Padilla and the victim were neighbors who had disputes over the years, largely relating to their animals going on each other's properties.[1] In June 2024, Padilla's pet pig went onto the victim's property, and he texted Padilla, "Your pig is over here." Padilla drove to the property, and a physical altercation ensued after Padilla loaded the pig into his truck. The altercation concluded with Padilla shooting the victim, followed by Padilla being charged with attempt to commit murder and willful injury resulting in serious injury. Padilla filed a notice of self-defense.

At the September 2024 trial, the victim testified that as he sat on his golf cart, Padilla instigated the assault, grabbing him off the golf cart, hitting him with a closed fist, and ripping the victim's shirt in the process. The two fell to the ground and rolled around "hitting, wrestling." At that point, the victim told Padilla to get off his property and grabbed the pocketknife that he

---

[1] Padilla described a number of disputes that included the fences, Padilla's sheep, cats, chickens, and the pet pig.

had in his pocket.  The victim testified that he did "not . . . think that [he] ever opened it or tried to attack to attack [Padilla] with it."  He explained how Padilla threatened him:

> Right after I reached for my pocket knife, that's when he told me that "Now you're going to fucking die," in those words, and that's when I got on my golf cart and took off to try to escape because I kind of had a bad feeling that he had a gun or something.

As described at trial, once Padilla retrieved his gun, he began firing at the victim.  He fired six shots total.  One of the shots struck the victim in his back, puncturing his lung.  The victim managed to drive his golf cart over to his house and crawl inside.  His wife was at home and called emergency responders and friends for assistance.

Padilla's testimony about the altercation opposed the victim's.  Padilla argued the victim lured the pig onto his property and started the altercation.  Padilla testified that the victim pushed him from behind after he loaded his pig into the truck.  When the victim "tackled" him, Padilla's truck keys fell to the ground.  Padilla alleged that the victim smelled "terribly" of alcohol and was holding a beer at the start of the interaction.  But the first responders did not observe the victim being intoxicated, nor did anyone find the beer can Padilla claimed he "smacked" onto the ground.

At first, Padilla indicated he was not afraid of the victim "even a little bit."  Knowing that the victim had a pocketknife, however, Padilla felt like the victim was reaching for it.  He next stated that the victim pulled out his pocketknife, opened the blade, and pursued him.  He alleged the victim was between him and the keys to his truck.  He denied telling the victim that he was going to die but did admit that he reached into his truck and pulled out the gun.  He claimed he "wasn't aiming for [the victim] at all."  He fired six times, hitting the victim once before he drove away on his golf cart.  Padilla

believed he had hit the victim in the legs at first, but he saw the victim slam back against the golf cart, "that's when I saw it, that he was hit in the torso." The victim then drove off on the golf cart. In Padilla's version, the victim was not on the golf cart when Padilla fired the shots. Once Padilla returned home, he called law enforcement and reported the shooting.

The State presented evidence that when law enforcement arrived at the victim's property, they observed six spent shell casings, a closed pocketknife, sunglasses, a hat, a torn t-shirt, and keys on the ground. Later, after the victim provided more information, another bullet was found. Law enforcement testified that the location of the bullets supported the victim's narrative of him leaving the area during the shooting. One of the law enforcement officers was asked about his observations of the victim at the scene, and he testified he did not smell any odor of alcohol.

One of the special agents who investigated the shooting testified that the pocketknife was found closed on the ground where the shooting occurred. The agent performed a demonstration with the victim's pocketknife. He demonstrated that to open the pocketknife a button must be pressed and the blade must be manually pulled out. To close the pocketknife that two-step process was again required. The agent testified that the pocketknife was found with the blade in the closed position and thus, would have been closed when dropped. Yet, in his testimony, the victim indicated that he "possibly" could do the two-step process with one hand.

Additionally at trial, the jury was shown a video of Padilla speaking with law enforcement after the altercation. He claimed that he had filed a report years ago with police about the victim harming his animals. An officer had checked the call logs and was not able to locate any complaints made to the sheriff from Padilla against the victim. Padilla's ex-wife, with whom he

4

shared five children, testified that his personality had changed in the months leading up to the shooting. She also testified that she had not heard Padilla allege that the victim harmed Padilla's animals.

Law enforcement testified that Padilla had security cameras at his home and law enforcement had a search warrant to obtain the videos. A deputy testified that an employee from the security company that stored the videos said that there were no recordings from that date and "implied that [Padilla] deleted the videos."

A law enforcement officer testified that it was clear Padilla had a "hatred" for the victim. The officer explained further that:

> [Padilla] had made numerous comments throughout my time with him that this was on a trajectory and that something's going to happen and kept referring to it as a conflict, even at one point I overheard him on the phone with one of his kids saying that the conflict had now happened, so I do believe that something bad in [Padilla's] mind was going to happen with him and [the victim].

Ultimately, the jury rejected Padilla's justification defense and found him guilty of attempted murder and willful injury resulting in serious injury. Padilla appeals.

## II. Standard of Review.

We review the sufficiency of the evidence supporting convictions for correction of errors at law. *State v. Crawford*, 974 N.W.2d 510, 516 (Iowa 2022). "In reviewing challenges to the sufficiency of evidence supporting a guilty verdict, [we] consider all of the record evidence viewed in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence." *State v. Reed*, 875 N.W.2d 693, 704 (Iowa 2016) (citation omitted). We affirm when the verdict is supported by

substantial evidence, meaning "the quantum and quality of evidence is sufficient to convince a rational fact finder that the defendant is guilty beyond a reasonable doubt." *State v. Banes*, 910 N.W.2d 634, 637 (Iowa Ct. App. 2018) (cleaned up).

### III. Analysis.

On appeal, Padilla argues there is insufficient evidence to prove that he was not justified in shooting the victim. Unchallenged jury instructions become the law of the case for purposes of our review of the sufficiency of the evidence. *State v. Schiebout*, 944 N.W.2d 666, 671 (Iowa 2020). To convict Padilla of attempted murder and willful injury resulting in serious injury, the State had to prove that he acted "without justification."[2] On

---

[2] Under the jury instructions the State had to prove the following elements of attempt to commit murder:

> 1. On or about June 19, 2024, [Padilla], without justification, discharged a firearm at [the victim].
>
> 2. By his acts, [Padilla] expected to set in motion a force or chain of events which would cause or result in the death of [the victim].
>
> 3. When [Padilla] acted, he specifically intended to cause the death of [the victim].

And the State had to prove the following elements of willful injury resulting in serious injury:

> 1. On or about June 19, 2024, [Padilla], without justification, did an act which was intended to cause pain or injury to [the victim] or to result in physical contact which was insulting or offensive to [the victim] or to place [the victim] in fear of an immediate physical contact which would have been painful, injurious, insulting or offensive to him.

appeal, Padilla solely argues that the State failed to prove he was not justified in taking the action he did.

Under Iowa law, "[a] person is justified in the use of reasonable force when the person reasonably believes that such force is necessary to defend oneself or another from any actual or imminent use of unlawful force." Iowa Code § 704.3 (2024). "The [justification] defense is both subjective and objective." *State v. Howard*, 14 N.W.3d 763, 767 (Iowa Ct. App. 2024). Once the "defendant raises a justification defense, the State has the burden to prove beyond a reasonable doubt that the defendant's use of force was not justified." *State v. Ellison*, 985 N.W.2d 473, 479 (Iowa 2023).

Padilla argues he "was not the aggressor and acted reasonably in his reaction to [the victim] pulling out a knife. The evidence at trial failed to disprove Padilla's justification defense beyond a reasonable doubt." He asserts the victim engaged him as the "aggressor and the initiator." Specifically, Padilla asserts that the State failed "to present substantial evidence that, at the time Padilla fired, Padilla either did not actually believe he was in imminent danger, or lacked reasonable grounds for that belief, or used unreasonable force." Viewing the evidence and the inferences drawn from it in the light most favorable to the State, we find sufficient evidence supports the jury's conclusion that Padilla was not justified in shooting the victim.

Though Padilla testified that he was fearful of the victim, "the jury could choose to believe all, some, or none of the evidence presented by

---

2. [Padilla] specifically intended to cause a serious injury to [the victim].

3. [Padilla's] acts caused a serious injury to [the victim].

[Padilla] at trial." *See Howard*, 14 N.W.3d at 768. From the victim's testimony the jury could conclude that Padilla was not justified in his actions given the knife verses gun details, the number of shots fired by Padilla, and the evidence supporting that shots were fired while the victim was retreating. *See State v. Stallings*, 541 N.W.2d 855, 856–57 (Iowa 1995) (concluding the victim's testimony of events supported the jury's finding that the defendant was not justified in shooting the victim).

Additionally, the location of the bullets supported the victim's testimony. A special agent with the Iowa Division of Criminal Investigation found six spent shell casings at the scene that had come from Padilla's gun. He then testified that after identifying the locations of bullet marks, including the bullet that entered the victim's body, it appeared that "the shooter would have been shooting at a person in the golf cart moving." And after the victim showed the investigators the path he took, law enforcement was able to discover one of the spent bullets that had hit a grain bin, along with another bullet fragment near a bullet mark on a hog building. All of which confirmed the victim's version of his travel on the golf cart moving away from where Padilla was. Based on these facts, the jury could reasonably conclude that, prior to Padilla shooting him, the victim was fleeing away on his golf cart and Padilla "unreasonably escalated the confrontation." *See Howard*, 14 N.W.3d at 768.

The State relies on *Howard* for the proposition that Iowa law does not permit a defendant to pursue a victim "and shoot him in the back after [the victim] fled . . . and no longer posed even an arguable threat." *Id.* Padilla claims that *Howard* is distinguishable from the events that took place here. He alleges the two distinguishing factors are that in *Howard* the victim was fleeing, and the victim was unarmed. *See id.* at 769. We find these facts are

not distinguishable. In considering whether the victim was fleeing or not, Padilla and the victim presented contrasting testimony to the jury. The victim testified that he "took off to try to escape" before he was shot, and law enforcement testified that the location of the bullets found at the scene corroborated this version of the facts. The only evidence to support Padilla's claim that the victim was not fleeing is his own testimony.

Here, the victim did have a pocketknife, but it is disputed whether he was pursuing Padilla with it. A jury could reasonably find that the evidence of the closed pocketknife at the scene and the demonstration from law enforcement that the pocketknife would not have opened or closed on its own without someone manually doing so support the victim's belief that he did not open the blade.

Along with this other evidence, the jury did observe Padilla's anger towards the victim when questioned at his home shortly after the shooting. The jury could gauge the credibility of both versions as both the victim and Padilla testified. Considering all of this along with the ballistic evidence corroborating the victim's version that Padilla went to his truck, retrieved his gun, and fired six shots—one of those striking the victim and others striking buildings on the path to leave—we find that the verdicts were supported by substantial evidence.

### IV. Conclusion.

Because substantial evidence supports the jury's verdicts, we affirm Padilla's convictions for attempted murder and willful injury causing serious injury.

**AFFIRMED.**