# IN THE COURT OF APPEALS OF IOWA

No. 21-1200
Filed October 19, 2022

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**JEREMY JAMES BEHRENDS,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Black Hawk County, Joel Dalrymple,

Judge.

Jeremy Behrends appeals dual convictions of domestic abuse assault

causing bodily injury, challenging the sufficiency of the evidence. **AFFIRMED.**

Daniel M. Northfield, Urbandale, for appellant.

Thomas J. Miller, Attorney General, and Kyle Hanson, Assistant Attorney

General, for appellee.

Considered by Bower, C.J., Tabor, J., and Mullins, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2022).

**MULLINS, Senior Judge.**

Jeremy Behrends appeals his dual convictions of domestic abuse assault causing bodily injury,[1] challenging the sufficiency of the evidence. He argues "there was insufficient evidence to convince a rational fact finder that [he] was guilty beyond a reasonable doubt." While he does not offer a specific argument as to how the State's evidence was lacking, he appears to argue the State did not establish assaultive acts occurred or that they resulted in bodily injuries.

## I. Background

The State charged Behrends by trial information with two crimes in relation to his alleged acts against the victim on or about October 10, 2020. The evidence presented at trial discloses the following.

In her testimony, the victim, Behrends's wife and mother of his child, acknowledged she was testifying due to a subpoena. She was resistant to questioning and understandably emotional, explaining, "I'm not going to ever be okay with sending . . . my daughter's father away. I can't do it. I can't do it." Due to her resistance, the court variously admonished her. Yet, she provided little substantive testimony.

The victim did testify she and Behrends are married but separated and share a child. In October 2020, the marriage "wasn't on good terms." On the date in question, the victim went to Behrends's house and they engaged in consensual

---

[1] Behrends was originally charged with one count of domestic abuse assault by impeding normal breathing or circulation of blood causing bodily injury and one count of domestic abuse assault causing bodily injury. The jury found him guilty of the lesser-included offense of domestic abuse assault causing bodily injury under count one and as charged under count two.

intercourse, after which Behrends became angry and wanted the victim to leave. The victim did not want to leave, however, because she was worried about Behrends's mental state.

The victim acknowledged calling 911. The audio recording of that call was admitted as evidence at trial. A number of the victim's statements in the recording are not understandable given her frantic state, but she can be understood to state her husband Jeremy Behrends beat her, she thought he broke her foot, and she needed an ambulance. After the ambulance arrived, the victim was taken to the hospital. In her testimony, the victim refused to identify what caused the injury to her ankle or foot.

The victim also acknowledged giving a statement to officers while she was at the hospital. During that statement, which was captured in a video that was admitted as evidence at trial, the victim is depicted in a hospital room on a stretcher and in a neck brace. In her statement, the victim recounted that, after intercourse "he said get out of my house" and

> he picks me up he slams me against the furnace or whatever that metal thing is against the wall by the bathroom door, and then he chokes me, and he has his fist against my face, my face by the tile, and then he's got my . . . leg and he's bending it back and then I get to the door and he shuts the door, takes my phone, tells me to go sit down on the couch, and he throws an ice pack at me.

When asked on cross-examination whether the injuries could have possibly occurred during the consensual intercourse, the victim answered, "Maybe" and "I don't know."

Dr. Kim Chapman testified the victim complained of neck and ankle pain when she arrived at the emergency room, and Chapman observed the victim's

ankle to be swollen and "she had red marks on her neck." The victim reported to Chapman that Behrends "slammed her up against the wall in the home, held her down on the ground, was punching her, holding her face into the tile and then indicated that he had twisted her legs and ankles up behind her trying to . . . break her ankle or her leg." Then, after she tried to leave, Behrends "choked her, wrapping his arm around her neck until she was unconscious." When she came to, she called 911. Chapman testified the injury to the ankle was "very recent because there wasn't any bruising. There was just swelling at the site, and swelling is what usually occurs initially when there's an injury." Chapman described the red marks as "somewhat circular and on one side of her neck," which was "consistent with finger marks" and "consistent with someone who had had some sort of assault or injury done recently."

Firefighter and paramedic Dwight Paul testified when he arrived on the scene, the victim advised she was assaulted and "said her neck and her head hurt" and "her ankle hurt." Paul also observed the victim's ankle was swollen and she had "some red marks on her neck," "possibly a handprint," as well as her arm. The victim specifically advised Paul "she was assaulted by her husband"—he "pushed her head through the wall and threw her to the ground and hurt her ankle" and "grabbed her multiple times and hit her again."

Officer Ryan Muhlenbruch with the Waterloo Police Department was dispatched to the scene and spoke with Behrends. Some of their exchange was captured by Muhlenbruch's body camera. In the video, Behrends basically reported he just did not remember anything other than waking up in the middle of having intercourse with the victim, upon which he told her to get out. When she

didn't leave, he "drug her outside."  Muhlenbruch testified Behrends's residence appeared to have been the subject of a recent disturbance, including a "large hole in the drywall," which he took pictures of.

Muhlenbruch went to the hospital and spoke with the victim.  Muhlenbruch testified to the victim reporting the following occurred after she had intercourse with Behrends:

> Mr. Behrends . . . became violent and . . . kept telling her to get out of his house, kind of out of nowhere, and at one point . . . picked her up and threw her to the ground, and they fell against the wall.
> And she also stated that at one point he had her in a strangle hold, and she felt that she had passed out, and that, in addition to that, at one point had her on her stomach and was bending her—bending her—had ahold of her ankles and bending her legs back towards her butt, back area, trying to—she felt that she—that he was trying to break her legs.

The victim complained her legs, angles, and neck hurt, and Muhlenbruch observed injuries to both of the victim's ankles, with the left ankle being swollen, bruising to her arm, and visible injuries to her neck.

Behrends testified he woke up on the date in question, around the time of which he had been using methamphetamine, to having intercourse with the victim, pushed her off of him, and asked her to leave.  When she didn't leave, Behrends "grabbed her by her arm and tried to pull her towards the door, but she resisted and either "tripped or . . . purposefully fell."  He then grabbed her by the ankle and "jerk[ed]" her into the kitchen and tried to get her to the door.  Then the victim advised she thought her ankle was broken, so Behrends got her an ice pack. Behrends eventually got her out the door, after which she apparently called 911. Behrends denied choking the victim, although he agreed he got physical with her

in an "offensive manner." He also agreed her injuries occurred at his residence during this incident.

Following the State's case-in-chief, the defense moved for judgment of acquittal. As to count one, the defense argued there was insufficient evidence to show a strangulation occurred. As to both counts, the defense basically argued there was insufficient evidence to show an assault occurred at all. The court denied this motion and the renewed motion for judgment of acquittal following the presentation of evidence for the defense.[2]

Upon the foregoing evidence, the jury found Behrends guilty of two counts of domestic abuse assault causing bodily injury. Behrends appeals.

## II.    Standard of Review

Challenges to the sufficiency of the evidence supporting a conviction are reviewed for correction of errors at law. *State v. Crawford*, 974 N.W.2d 510, 517 (Iowa 2022). In reviewing a challenge to the sufficiency of the evidence, the court views "the evidence 'in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence.'" *State v. Ortiz*, 905 N.W.2d 174, 180 (Iowa 2017) (quoting *State v. Huser*, 894 N.W.2d 472, 490 (Iowa 2017)). All evidence is considered, not just that of an inculpatory nature. *See Huser*, 894 N.W.2d at 490. A verdict will be upheld if substantial evidence supports it. *State v. Wickes*, 910 N.W.2d 554, 563 (Iowa 2018) (quoting *State v. Ramirez*, 895 N.W.2d 884, 890 (Iowa 2017)). "Evidence is substantial if, 'when

---

[2] We note defendants can now challenge the sufficiency of the evidence on direct appeal without first raising the specific challenge in a motion for judgment of acquittal in the district court. *See State v. Crawford*, 972 N.W.2d 189, 194 (Iowa 2022).

viewed in the light most favorable to the State, it can convince a rational jury that the defendant is guilty beyond a reasonable doubt.'" *Id.* (quoting *Ramirez*, 895 N.W.2d at 890). Evidence is not rendered insubstantial merely because it might support a different conclusion; the only question is whether the evidence supports the finding actually made. *See State v. Jones*, 967 N.W.2d 336, 339 (Iowa 2021). In considering a sufficiency-of-the-evidence challenge, "[i]t is not the province of the court . . . to resolve conflicts in the evidence, to pass upon the credibility of witnesses, to determine the plausibility of explanations, or to weigh the evidence; such matters are for the jury." *State v. Musser*, 721 N.W.2d 758, 761 (Iowa 2006) (quoting *State v. Williams*, 695 N.W.2d 23, 28 (Iowa 2005)).

### III.    Analysis

While Behrends challenges the sufficiency of evidence supporting his convictions, he provides us with little guidance on what he thinks the State failed to prove. He points out that he "testified, and said that he couldn't for sure account for whether or not the alleged victim had marks on her before the alleged assault." He also points to the victim's reluctance to testify and the lack of substance her testimony provided in submitting she "was not very helpful to the prosecution at trial." Behrends goes on to insinuate the injuries could have happened during consensual intercourse. Based on these considerations, Behrends submits "there was insufficient evidence to convince a rational fact finder that [he] was guilty beyond a reasonable doubt."

While he does not specifically say so, we interpret his challenge to be a claim that the State failed to show assaultive acts actually occurred. On this point, the jury was instructed under both counts that Behrends was guilty if he

> did an act which was intended to cause pain or injury to [the victim], or did an act that resulted in physical contact which was insulting or offensive to [the victim], or placed [the victim] in fear of an immediate physical contact which would have been painful, injurious, insulting, or offensive to [the victim].

*Accord* Iowa Code § 708.1(2)(a), (b) (2020); *see also State v. Banes*, 910 N.W.2d 634, 639 (Iowa Ct. App. 2018) (noting jury instructions unchallenged on appeal serve as the law of the case for purposes of reviewing the sufficiency of the evidence).

The victim herself testified Behrends became angry with her. Her 911 call told the jury Behrends beat her, she thought he broke her foot, and she needed an ambulance. She also reported to law enforcement at the hospital Behrends engaged in various acts of violence against her—slamming her against the wall, choking her, bending her legs back, putting his fist against her face, putting her face against the tile, and throwing an ice pack at her. The victim told the doctor Behrends slammed her up against the wall, held her to the ground, punched her, held her face to the tile, twisted her legs, and choked her. The victim told the paramedic "she was assaulted by her husband"—he "pushed her head through the wall and threw her to the ground and hurt her ankle" and "grabbed her multiple times and hit her again."

Long story short, the evidence, when viewed in the light most favorable to the State, shows Behrends engaged in various acts that meet the definition of an assault. To the extent Behrends argues those acts did not cause bodily injuries, the evidence is substantial that they caused "physical pain, illness, or any impairment of physical condition," as the jury was instructed. *See State v. Taylor*, 689 N.W.2d 116, 135 (Iowa 2004) (defining bodily injury).

Because the jury's verdicts enjoy substantial evidentiary support on the elements Behrends's claims can be interpreted to challenge, we affirm his convictions.

**AFFIRMED.**