# IN THE COURT OF APPEALS OF IOWA

No. 21-1483
Filed December 21, 2022


**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**TIMOTHY RYAN PROSS,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Des Moines County, Mark Kruse,

Judge.


        Timothy Pross appeals his convictions for first-degree arson and second-

degree burglary.  **AFFIRMED.**


        Theresa J. Seeberger, Iowa City, for appellant.

        Thomas J. Miller, Attorney General, and Kyle Hanson, Assistant Attorney

General, for appellee.


        Considered by Greer, P.J., Ahlers, J., and Gamble, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2022).

**GAMBLE, Senior Judge.**

A jury convicted Timothy Pross of first-degree arson and second-degree burglary. Pross argues his convictions are not supported by sufficient evidence because insufficient evidence identifies him as the perpetrator and the court should have excluded a portion of a phone call exhibit. We affirm.

## I. Background Facts and Prior Proceedings

Pross and C.L. dated for almost two years and lived together for most of that time. They broke up in March of 2020. But Pross had a hard time accepting that their relationship had ended. In fact, there was a no contact order issued in October to prevent communication between them.[1]

C.L. had moved on and began a relationship with J.J., and the two moved in together. Pross and J.J. communicated with each other by phone but had never met in person.[2] On one December phone call, J.J. informed Pross that C.L. was pregnant. Pross threatened to burn their house down. Around that same time, Pross showed up to a friend's house wearing a ghillie suit and talked with his friend's wife.[3]

At midnight on the evening of December 17 going into December 18, C.L. spotted Pross walk down the sidewalk by her house dressed in regular clothes.

---

[1] It is not apparent from our record whether the no contact order was a mutual no contact order or specifically prevented Pross from contacting C.L.

[2] J.J. and Pross dispute who typically initiated their phone calls, with both pointing the finger at the other.

[3] "A ghillie suit is a type of camouflage clothing designed to resemble the background environment . . . . The suit gives the wearer's outline a three-dimensional breakup, rather than a linear one." *Ghillie suit*, Wikipedia.org (last visited Dec. 6, 2022), https://en.wikipedia.org/wiki/Ghillie_suit; *cf. Linn v. State*, 929 N.W.2d 717, 722 n.3 (Iowa 2019) (citing to Wikipedia and noting it can be a helpful tool to "get a sense of a term's common usage").

J.J. came home from his second-shift job, which ended at 2:00 a.m., like normal that night. After a little while, J.J.'s surveillance system alerted him that someone was in the backyard. He looked out of his kitchen window and saw someone in a ghillie suit trying to break his car window and set his car on fire. J.J. told the person through the surveillance system that he called the police. J.J. was able to see the person's face when they briefly lifted the mask covering their face and looked toward the kitchen window. Then the person walked up to the house, broke out a window, and lit the curtain and blind on fire. J.J. put the fire out with a fire extinguisher. Meanwhile, the person in the ghillie suit ran toward the front of the house and into a wooded area across the street.

C.L was in a bedroom and did not observe the incident firsthand. But later when she watched a recording of the surveillance video, C.L. was able to identify Pross as the perpetrator because she knew his walk, gait, hand gestures, mannerisms, and posture after living with him for quite some time.

Following an investigation, police arrested Pross. While in custody, Pross called several people and made statements like "I hear there's no face, no case," and "my fucking friends told on me dude" after reading from an affidavit. When discussing who would set curtains on fire, the other person on the call said, "definitely you." Pross replied, "yeah, that's definitely a me move. Dad always said though if you're gonna burn the house down, Tim, start with the curtains." Pross discussed his bond with someone; they explained to him, "you go to court tomorrow on the new charges you just got, and they'll give you a bond then." Pross clarified, "I go to court tomorrow? For the new charges, for the first-degree arson and second-degree burglary?" The person on the call responded, "yeah." When

discussing his ghillie suit, he explained that he didn't know where it was and said he "got to come up with a logical reason for having that fucking thing."

Pross sought to exclude multiple portions of the jailhouse phone calls, including the references to "new charges." The court ultimately determined the references to "new charges" merely referenced the charges at hand and did not imply old or past charges.

Following the State's presentation of evidence, Pross moved for judgment of acquittal claiming a lack of sufficient evidence. The court denied the motion, and Pross presented testimony from himself and a friend who said Pross was with him on the night of the fire. Again, Pross moved for judgment of acquittal, which was again denied.

The jury convicted Pross of first-degree arson and second-degree burglary. Pross appeals.

**II. Scope and Standard of Review**

We review challenges to the sufficiency of the evidence for corrections of errors at law. *State v. Sanford*, 814 N.W.2d 611, 615 (Iowa 2012). Guilty verdicts must be supported by substantial evidence, which is "that upon which a rational trier of fact could find the defendant guilty beyond a reasonable doubt." *State v. Serrato*, 787 N.W.2d 462, 465 (Iowa 2010) (citation omitted). While we consider all evidence, we view it in the light most favorable to the State. *Id.* So "[e]vidence is not insubstantial merely because we may draw different conclusions from it; the ultimate question is whether it supports the finding actually made, not whether the evidence would support a different finding." *State v. Lacey*, 968 N.W.2d 792, 800–01 (Iowa 2021) (citation omitted).

With respect to evidentiary challenges, we review for an abuse of discretion. *State v. Webster*, 865 N.W.2d 223, 231 (Iowa 2015). "An abuse of discretion occurs when the trial court exercises its discretion 'on grounds or for reasons clearly untenable or to an extent clearly unreasonable.'" *State v. Rodriquez*, 636 N.W.2d 234, 239 (Iowa 2001) (citation omitted).

## III. Discussion

### A. Sufficiency of the Evidence

We first address Pross's challenge to the sufficiency of the evidence.[4] Pross only challenges the sufficiency of the evidence establishing identity.[5] He

---

[4] Pross requests we adopt the plain-error doctrine to address this claim or consider it within the ineffective-assistance framework. Neither is required to reach the merits. *State v. Crawford*, 972 N.W.2d 189, 194 (Iowa 2022). *Crawford* dictates that we now consider the sufficiency of the evidence absent a specific motion for judgment of acquittal because a defendant necessarily objects to the elements of an offense by contesting the evidence at trial. *Id.* at 198.

[5] "Where, as here, the jury was instructed without objection, the jury instructions become the law of the case for the purposes of reviewing the sufficiency of the evidence." *State v. Banes*, 910 N.W.2d 634, 639 (Iowa Ct. App. 2018). The jury instructions required the jury find these three elements satisfied to find Pross guilty of first-degree arson:

    1. On or about December 18, 2020, the defendant caused a fire in or near property.

    2. The defendant specifically intended to destroy or damage the property or knew the property would probably be destroyed or damaged.

    3. The presence of a person in the property could have been reasonably anticipated.

As to second-degree burglary, the jury instructions required the jury find these six elements satisfied to find Pross guilty:

    1. On or about December 18, 2020, the defendant broke into or entered a residence at [J.J. and C.L.'s address].

    2. The residence was an occupied structure.

    3. The defendant did not have permission or authority to break into or enter the residence.

    4. The residence was not open to the public.

    5. The defendant did so with the specific intent to commit an assault or arson in the first or second degree.

points out perceived weaknesses in the State's case, like the fact that Pross and J.J. had never met in person, yet J.J. identified him as the perpetrator, and C.L. identified Pross as the perpetrator only by watching security camera footage and recognizing Pross's gate and hand gestures without seeing his face. Pross contends this evidence is not reliable, moreover he notes J.J. is a felon and argues his word cannot be credited.

But Pross's focus on perceived weaknesses in the State's case turns a blind eye on its strengths. True, J.J. has a 2018 felony conviction, which Pross used to impeach his credibility, *see* Iowa R. Evid. 5.609, but we leave credibility determinations to the jury. *See Carter v. Carter*, 957 N.W.2d 623, 635 (Iowa 2021) ("It is for the jury to determine the credibility of witnesses."). Moreover, security camera footage supported J.J.'s retelling of events—adding to his credibility. Both J.J. and C.L. identified Pross as the perpetrator. Both had reasonable explanations for naming Pross—J.J. briefly saw the perpetrator's face while he looked out the kitchen window and the perpetrator lifted his mask; C.L. previously lived with Pross for about a year and a half and had become familiar with his mannerisms. It was for the jury to decide if their bases were reliable. *See State v. Doolin*, 942 N.W.2d 500, 511 (Iowa 2020) ("Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable features." (citation omitted)); *cf. State v. Martinez*, No. 17-1373, 2018 WL 3060270, at *3 (Iowa Ct. App. June 20, 2018) (finding insufficient evidence where police identification of perpetrators from video was

---

6. One or more persons were present in or upon the occupied structure.

based on non-distinctive gaits and officers did not have "an especially close relationship with either suspect" (citations omitted)).

Pross also had motive to harm C.L. and J.J. *See State v. Richards*, 809 N.W.2d 80, 94 (Iowa 2012) (recognizing a person's motive to commit an offense is probative to identity). He had a hard time accepting his break up with C.L., to the point there was a no-contact order between them. And he had recently found out C.L. and J.J. were expecting a child together, which prompted Pross to threaten to burn their home down within days of the fire. This implicates Pross.

Also, Pross had ready access to a ghillie suit—the perpetrator's choice of camouflage. He admitted to wearing one to a friend's home just days before the fire. We understand anyone can purchase such a suit (as Pross points out), but that does nothing to change the fact that we know Pross actually had one within days of the fire. *Cf. State v. Powell*, No. 20-1308, 2021 WL 5105907, at *2 (Iowa Ct. App. Nov. 3, 2021) (finding sufficient evidence when the defendant was discovered by police wearing an outfit consistent with clothing worn by the perpetrator and captured on video). Moreover, Pross was heard on a jailhouse phone call realizing he would need to "come up with a logical reason for having that fucking thing," suggesting he actually had it for the purpose of camouflaging himself when he tried to burn the house down and was trying to think of a legitimate purpose for owning it.

This leads us to consider Pross's incriminating statements made during his phone calls. He complained his friends told on him, suggesting they had incriminating facts about him to share. He agreed when someone said the fire sounded like something he would do. And he commented that his father told him

to start with the curtains if he ever wanted to burn a house down—and here the perpetrator started the fire by lighting the curtains and blinds on fire.

Taking in all of the evidence in the light most favorable to the State, we conclude there is sufficient evidence establishing Pross's identity as the perpetrator and supporting his convictions.

**B. References to "New Charges"**

Finally, we address Pross's challenge to the district court's decision to not redact references made to "new charges" on the jailhouse phone call. Pross contends the references ran afoul of Iowa Rule of Evidence 5.404(b), which provides, "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Pross contends use of the word "new" led jurors to believe Pross had other, additional charges for arson and burglary besides those charged in the current case.

Here, context is key. We agree with the district court and State that when listening to the phone call, "new charges" clearly references the charges in this case and did not give the jury an opening to infer Pross had any additional charges for it to consider. So rule 5.404(b) is not implicated. *See* Laurie Kratky Doré, *Iowa Practice Series: Evidence* § 5.404:6 n.11 (West Nov. 2022 update) (recognizing "rule 5.404(b) applies only to proof of bad acts or crimes 'other' than the crime charged"). To the extent Pross argues the references should have been redacted under rule 5.403 because their probative value was substantially outweighed by a danger of unfair prejudice, we disagree. There was little, if any, danger of unfair prejudice with the inclusion of the references to "new charges." And like the district

court, we think redacting these innocuous references would have actually sparked the jury's interest and curiosity about what was redacted without good reason for doing so.  So we conclude the district court did not abuse its discretion when it permitted the jury to hear the unredacted phone call.

**IV. Conclusion**

We conclude there is sufficient evidence supporting Pross's convictions for first-degree arson and second-degree burglary.  The district court did not abuse its discretion when it permitted the jury to hear the unredacted jailhouse phone call.

**AFFIRMED.**