# IN THE COURT OF APPEALS OF IOWA

No. 23-1062
Filed June 5, 2024

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**ERIC ANELA PERRY,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Pottawattamie County, Charles D. Fagan, Judge.

        A defendant appeals his conviction for operating while intoxicated. **AFFIRMED.**

        Martha J. Lucey, State Appellate Defender, and Ella M. Newell, Assistant Appellate Defender, for appellant.

        Brenna Bird, Attorney General, and Genevieve Reinkoester, Assistant Attorney General, for appellee.

        Considered by Tabor, P.J., and Greer and Schumacher, JJ.

**GREER, Judge.**

Eric Perry contends that he was not intoxicated so cannot be guilty of operating while intoxicated (OWI). A jury thought otherwise. Alternatively, Perry contends that a juror committed misconduct so we should remand the case for further hearing on that issue in any event. We affirm the conviction.

Two men arrived at a convenience store in a white pickup truck at around 2:45 a.m. They parked at a gas pump, got out of the truck, and went inside the store. Once inside, two cashiers observed the men. One of the men was very quiet, unable to speak loud enough for one cashier to hear him, struggling to stay balanced, and unable to stand very well. The other was "very belligerently loud and causing more of a disruption in the store." When the cashiers agreed the two were "under the influence of alcohol," one cashier called 911 and reported the possibility that a man was driving intoxicated.

Council Bluffs Police Officer Trevor Benson responded to the 911 call. He approached a white Chevrolet Silverado parked at a gas pump and began speaking with a man sitting in the truck. The man claimed that he had just pumped gas and was only a passenger. A second man exited the convenience store and walked up to the truck. Officer Benson requested identification, and the second man offered a driver's license, which identified him as Eric Perry; the man in the truck identified himself as Jeremy Shepherd.

After running Perry's driver's license information through his database, Officer Benson learned that Perry's driving privileges were suspended. While interacting with Perry, Officer Benson observed that Perry had watery eyes, impaired balance, and smelled like ingested alcohol. He also noticed that Perry

had slightly unsteady balance, was swaying a little bit, and moved slowly and deliberately. Officers Jon Simonin and Trevor Mass also responded to the call, and Officer Simonin noted that Perry slurred his speech and had a strong smell of alcohol on his breath. Officer Mass smelled the odor of an alcoholic beverage on Perry's breath and noted that "his eyes were bloodshot and he had that watery, glossy look in his eyes." Because Perry insisted that he had not driven, Officer Simonin reviewed security footage from the store. The footage showed Perry driving the truck, parking it at the gas pump, and then walking into the store; the same footage showed the passenger approach the truck, begin pumping fuel, and sit in the driver's seat while waiting for Perry to return.

Officer Benson placed Perry under arrest for not having a valid driver's license, a simple misdemeanor, in violation of Iowa Code section 321.174(1) (2023). He informed Perry that he would also be investigating him for OWI. Officer Benson placed Perry in the backseat of his vehicle, and while Perry was sitting there, Officer Simonin noticed that the smell of alcohol coming from Perry intensified.

Once at the county corrections facility, Perry refused to participate in the horizontal gaze nystagmus, walk and turn, or one leg stand tests. Although Officer Benson asked Perry to stand, Perry stayed sitting while Officer Benson explained each test, and Perry spoke slowly and apathetically during each explanation. Perry said that he had medical issues that prevented him from performing the tests including a previous surgery on his left knee. Perry also declined to take a

preliminary breath test or to provide a breath sample for DataMaster testing.[1]  The State charged Perry via trial information with OWI, second offense, an aggravated misdemeanor, in violation of Iowa Code section 321J.2(2)(b).

At trial, the parties waived reporting of voir dire.  One convenience store clerk testified that he and the other clerk observed signs of intoxication when they were ringing up the purchases of the two men.  All three officers testified as to their observations of Perry at the convenience store and county corrections facility.  The State offered, and the court admitted, body camera footage from Officers Simonin and Benson that depicted their interactions with Perry at the convenience store and county corrections facility.  On cross-examination, Officer Simonin agreed that when he was interacting with Perry, Perry was not belligerent or slurring his words and did not "lose his balance despite being cuffed behind the back."  Officer Benson also conceded that when he placed Perry into the back of "the vehicle, he didn't stumble or fall over or anything like that."  Officer Benson agreed that at some points Perry was able to answer questions and "had a reasonable conversation" during which Perry was not "ever slurring his words."  Shepherd testified on Perry's behalf and stated that he did not see Perry drink or use any illegal drugs on the day of his arrest.  The jury found Perry guilty as charged.[2]

Perry filed a motion for a new trial based on juror misconduct and ineffective assistance of counsel.  He attached a screenshot of a Facebook messenger message to the motion.[3]  The message was sent from someone who claimed to

---

[1] The DataMaster tests breath samples for blood alcohol content.
[2] Perry stipulated to a previous OWI conviction.
[3] Although undated, Perry stated at the hearing that the message came five days after the jury reached its verdict.

be on Perry's "jury for the DUI" and read, in part: "There was a Karen[4] on your jury that was married to a cop." The sender of the message, purportedly juror D.H., also wrote that the same "Karen" "said [D.H.] should be dismissed for saying that [he doesn't] trust the police." Perry guessed that the juror that the sender was writing about was A.M. Perry provided juror questionnaires as an exhibit at the hearing on the motion, however, the questionnaire for A.M. was not included. Perry's counsel submitted his notes from voir dire as another exhibit; there were no notes next to A.M.'s name. But Perry's counsel insisted that he "certainly would have written down that someone was married to a law enforcement official. [He] would have struck that person."

The court denied the motion, explaining it doubted juror D.H. was the actual sender of the message and found that the substance of the message seemed like it recounted something "more like jury deliberations within a normal course of deliberating the evidence presented to them. So I don't find that that created a bias of any type that would warrant overturning a verdict." The court added that the message "is a very nebulous document that [it was] giving very little credibility to because it just doesn't purport to show anything that would rise to the level of overturning the verdict." The court then sentenced Perry to a two-year term of imprisonment, suspended the sentence, and placed Perry on probation. It also required that Perry "[r]eside at the Residential Correction Facility until maximum benefits have been achieved as determined by the Department." Perry appeals.

---

[4] The sender appears to be using "Karen" as pejorative slang. *See* Ashitha Nagesh, *What exactly is a "Karen" and where did the meme come from?*, BBC News (July 30, 2020), https://www.bbc.com/news/world-53588201.

**I. Standard of Review.**

We review the sufficiency of the evidence supporting convictions for correction of errors at law. *State v. Crawford*, 974 N.W.2d 510, 516 (Iowa 2022). We "affirm when the verdict is supported by substantial evidence," meaning "the quantum and quality of evidence is sufficient to 'convince a rational fact finder that the defendant is guilty beyond a reasonable doubt.'" *State v. Banes*, 910 N.W.2d 634, 637 (Iowa Ct. App. 2018) (citation omitted). In conducting our review, we consider the evidence in the light most favorable to the verdict, including all reasonable inferences that may be fairly drawn from the evidence. *Id.*

**II. Analysis.**

Perry raises two arguments on appeal: (1) there was not sufficient evidence of intoxication to support the OWI conviction and (2) the court should have granted an evidentiary hearing to determine if there was juror bias.

**A. Sufficiency-of-the-Evidence.**

First, Perry argues that the State failed to provide substantial evidence to support his conviction for OWI. Because Perry refused to submit to standardized field sobriety testing or chemical testing, the uncontested jury instructions for OWI here required that the State prove that he (1) "operated a motor vehicle" while (2) he "was under the influence of alcohol, other drugs, or a combination of alcohol or drugs." *See* Iowa Code § 321J.2(1)(a); *State v. Myers,* 924 N.W.2d 823, 827–28 (Iowa 2019) (noting that the operating-while-intoxicated alternative found in section 321J.2(1)(a) "primarily utilizes evidence of a person's conduct and demeanor"). Perry does not contest that he was operating a motor vehicle, so we focus our analysis on the State's burden to prove that Perry was "under the

influence." Based on the instructions given to the jury, the State could meet this burden by presenting substantial evidence that (1) Perry's reason or mental ability was affected, (2) his judgment was impaired, (3) his emotions were visibly excited, or (4) he lost control of bodily actions or motions to any extent. The jury instructions also permitted the jury to consider Perry's refusal to provide a breath sample for analysis in reaching its verdict. *See* Iowa Code § 321J.16; *State v. Massick*, 511 N.W.2d 384, 387 (Iowa 1994). And the jury could consider Perry's truthfulness in his interactions with law enforcement. *See State v. Little*, No. 19-1062, 2021 WL 1400068, at *9 (Iowa Ct. App. Apr. 14, 2021) (noting a jury could properly infer guilt based upon actions such as making inconsistent statements to the police or use of a fake name to disguise involvement).

Perry's argument on appeal is essentially that because he "was able to answer officer's questions, follow directions, and asked questions of his own that logically made sense," the State did not present substantial evidence that he was under the influence. But this argument ignores the evidence to the contrary that the State did present. "Evidence is considered substantial if, when viewed in the light most favorable to the State, it can convince a rational jury that the defendant is guilty beyond a reasonable doubt." *State v. Trane*, 934 N.W.2d 447, 455 (Iowa 2019) (quoting *State v. Ramirez*, 895 N.W.2d 884, 890 (Iowa 2017)). "[T]he evidence must raise a fair inference of guilt and do more than create speculation, suspicion, or conjecture." *State v. Kern*, 831 N.W.2d 149, 158 (Iowa 2013) (quoting *State v. Webb*, 648 N.W.2d 72, 76 (Iowa 2002)).

Even without the benefit of standardized field sobriety testing or chemical testing results, the State may still present substantial evidence that a defendant

was under the influence of alcohol. *State v. Klingenberg*, No. 21-0575, 2022 WL 1486840, at *2–3 (Iowa Ct. App. May 11, 2022) (finding substantial evidence supported the OWI conviction when defendant admitted to drinking, "submitted to a preliminary breath test but declined to participate in any field-sobriety tests," and "refused to provide a breath sample"); *State v. Brekke*, No. 18-0620, 2019 WL 1055849, at *1–2 (Iowa Ct. App. Mar. 6, 2019) (finding substantial evidence supported the OWI conviction when defendant's "horizontal gaze nystagmus test indicated intoxication, but he could not complete other field sobriety tests due to a claimed back injury" and he "refused to take a preliminary breath test" or "submit a breath sample"). The State did so here by presenting testimony from three members of law enforcement that Perry smelled of ingested alcohol, had glossy or watery eyes, and moved slowly and deliberately. The convenience store cashier testified that Perry was acting belligerently and, based on his observations of Perry's behavior, that he believed Perry was under the influence. And Officer Benson testified that Perry was somewhat unsteady and was swaying on his feet. The jury could rely on this testimony to find that Perry had lost control of his bodily actions or motions and his emotions were visibly excited.

Perry's argument in response to this evidence from the State usurps the role of the jury, which was tasked with weighing any contradictory evidence and determining the credibility of witnesses. In reviewing jury verdicts, generally, "[i]t is not the province of the court . . . to resolve conflicts in the evidence, to pass upon the credibility of witnesses, to determine the plausibility of explanations, or to weigh the evidence; such matters are for the jury." *State v. Williams*, 695 N.W.2d 23, 28 (Iowa 2005) (citation omitted). "[W]e defer to the fact finder's determinations

concerning witness credibility." *State v. Wells*, 629 N.W.2d 346, 356 (Iowa 2001). This is so because "[i]nherent in our standard of review of jury verdicts in criminal cases is the recognition that the jury [is] free to reject certain evidence, and credit other evidence." *State v. Nitcher*, 720 N.W.2d 547, 556 (Iowa 2006) (citation omitted); *see also State v. Shorter*, 945 N.W.2d 1, 10 (Iowa 2020) ("[T]he jury can believe some of a witness's story while rejecting other parts.").

Here, the jury was able to hear the testimony of the State's witnesses and reach a conclusion about that testimony's veracity and weight. And on top of the witness testimony, the jury viewed the body camera footage that allowed it to independently assess Perry's condition. Although Perry insists that the videos do not show him slurring his words, that conclusion was for the jury to make. The jury could also consider that Perry initially lied to the officers and said he was not the driver of the truck. Further, the officers testified to a strong smell of ingested alcohol coming from Perry's person and that the smell intensified while Perry was confined in the back of Officer Benson's patrol vehicle. In all, this evidence, paired with Perry's refusal to participate in any testing and his untruthfulness about driving the truck, was sufficient evidence for the jury to convict Perry of OWI.

## B. Juror Bias.

Second, at the hearing on his motion for new trial, Perry requested an evidentiary hearing to further explore "what went on" with the juror mentioned in the Facebook message. Perry argues that because D.H.'s Facebook message established that a member of the jury was married to a member of law enforcement, the juror might have been biased against him and her failure to disclose the relationship could be misconduct. Perry asserts he was entitled to an

evidentiary hearing on juror bias and the case should be remanded for an evidentiary hearing on that bias issue. The State contends challenges involving juror misconduct and juror bias are distinct and separate and because a claim over juror misconduct does not preserve error on a claim of juror bias, Perry did not preserve the challenge for appeal. "Juror misconduct ordinarily relates to actions of a juror, often contrary to the court's instructions or admonitions, which impair the integrity of the fact-finding process at trial," whereas "[a] biased juror is simply unable to come to a fair decision in a case based upon the facts and law presented at trial." *State v. Webster*, 865 N.W.2d 223, 232 (Iowa 2015). From the record we do have, it appears Perry's challenge is over the juror's alleged bias. *See id.* ("The question of a challenge for juror bias may be considered preserved based on the theory that the substance of the claim, rather than its label, controls.").

Perry's claim implicates both his constitutional rights to a fair trial by an impartial jury, *see* U.S. Const. amend. VI; Iowa Const. art. I, § 10; *State v. Lilly*, 930 N.W.2d 293, 298 (Iowa 2019) ("We review constitutional issues de novo." (citation omitted)), and the district court's denial of his motion for new trial based on juror bias, *Webster*, 865 N.W.2d at 231 ("We review a denial of a motion for a new trial based upon juror misconduct or juror bias for an abuse of discretion."). *But see State v. Ary*, 877 N.W.2d 686, 699 (Iowa 2016) (declining to resolve whether a defendant's claim they were denied the right to a fair trial by an impartial jury should be reviewed under a de novo or an abuse-of-discretion standard). Here, our conclusion is the same under either standard of review. That said, "a party who fails to avail himself or herself of procedures for identifying bias waives later challenges for juror impartiality." *Webster*, 865 N.W.2d at 237.

At the outset, we note that voir dire was not reported, which leaves us with a limited record on which to decide this matter. And as for the label of the challenge, at the hearing on the motion for new trial, both Perry, the State, and the court referenced juror "bias" at various times. To address the juror-bias claim, we are left with a Facebook message containing hearsay information to support a challenge to a juror who is not clearly identified.[5] And as Perry acknowledges in his appellate briefing, "being married to a law enforcement officer is not itself enough to establish that this juror was unable to fairly consider the evidence." Here we agree with the court that, rather than suggesting improper bias warranting a new trial, the statements outlined in the message reflect the banter that might occur during jury deliberations. The court noted:

> I don't believe—and even that, I'm not sure that I can give that credit, that it's even [D.H.]. So I'm heavily discounting that that is, in fact, [D.H.].
> But even if I gave it the credit, it looks more like jury deliberations within a normal course of deliberating the evidence presented to them. So I don't find that that created a bias of any type that would warrant overturning a verdict, when we have a sealed verdict in which all parties unanimously found him guilty of that offense.

Other than mentioning the "biased" juror was married to a "cop," there was no evidence of either actual or implied bias within the text of the message. *See id.* at 236. Given our review of the record, we agree with the district court's decision

---

[5] It was not even clear which juror supposedly sent the message, as the juror profile identified did not show any conviction for an alcohol offense though the message suggested the juror had a previous conviction involving the operation of a vehicle while impaired.

to deny the request for a further evidentiary hearing on this issue.  Therefore, we affirm the conviction.

**AFFIRMED.**