# IN THE COURT OF APPEALS OF IOWA

No. 24-1503
Filed September 4, 2025

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**LAQUEL ARTORIS DEMOND CARROL,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Scott County, Henry W. Latham II, Judge.

The defendant challenges the sufficiency of the evidence supporting his conviction for tampering with a witness and the denial of his motion for new trial. **AFFIRMED.**

Gary Dickey of Dickey, Campbell, & Sahag Law Firm, PLC, Des Moines, for appellant.

Brenna Bird, Attorney General, and Joshua Henry, Assistant Attorney General, for appellee.

Considered without oral argument by Tabor, C.J., and Greer and Buller, JJ.

**GREER, Judge.**

A jury convicted Laquel Carrol[1] of tampering with a witness, in violation of Iowa Code section 720.4 (2023). Carrol appeals his conviction on two grounds, arguing (1) there is insufficient evidence to support his conviction and (2) the court abused its discretion in denying his motion for a new trial based on an improper jury instruction and the jury's access to unauthorized information.

## I.     Background Facts and Proceedings.

In September 2023, Carrol met A.M. at a liquor store, where A.M. was employed as a cashier. Carrol offered to sell A.M. mairjuana. From that contact, A.M. began using Carrol as her marijuana supplier. A few months later, on November 8, A.M. contacted Carrol to purchase marijuana, but Carrol offered "puppy chow," which she assumed was cocaine and agreed to purchase. Carrol brought the substance to the liquor store where A.M. worked. A.M. consumed the substance in the store's bathroom and then returned to the cashier counter. After that consumption, A.M. lost consciousness due to an overdose; customers found her and she was then transported to a hospital.

Shortly after, Sergeant Greg Hill of the Scott County Sheriff's Department drug task force arrived at the liquor store in response to a report of a potential overdose. After learning the person had already been transported for medical care, another deputy went to the hospital to interview A.M. While at the hospital A.M. identified who provided her the substance and she agreed to tesitfy about the incident.

---

[1] Various spellings of Carrol's first name appear in the record, including La'Quel, La'quel, and Laquel; we use the spelling from the trial transcript.

As a part of his investigation, Sergeant Hill reviewed the surveillance footage from the liquor store. The video showed a man approach A.M. at the counter and conduct what appeared to be a drug transaction. Later, Carrol was identified as the man in the video and two search warrants were issued. On November 22, the search warrants were executed and Carrol was arrested on various drug charges. Sergeant Hill testified about interviewing Carrol that day, stating that Carrol said he knew what this was about, "this is about [A.M.], he said that he didn't do it, and then he made a comment of something about even if I did deliver something to her, you don't know what it is and I will be able to fight that." Carrol posted bond and later secured his release from jail on November 29. That same morning, Carrol and Sergeant Hill attended a preliminary hearing and Sergeant Hill testified that from Carrol's comments, which echoed his November 22 remarks, it seemed clear that he knew A.M. was a witness in the underlying investigation from the November 8 overdose incident.

The same day he was released on bond, Carrol visited the liquor store where A.M. worked. A.M. testified to the following facts. Carrol entered the store with two women plus a child and immediately approached her at the counter. Carrol appeared "paranoid," "sarcastic," and "[a]lmost like he was losing it." A.M. felt intimidated, her heart was racing, and she was a little nervous. Carrol told A.M. he informed his friends and lawyer that she would not testify against him. Specifically, he said that he told his lawyer "that [they] were friends and that [A.M.] would not testify against him and that the detectives were crazy for blaming him for an overdose." Carrol commented in front of his companions that "it's not like she's an informant, it's not like she's wearing a wire." A.M. took Carrol's comments

as "an intimidation-type deal." A.M. claimed it made her feel threatened, like she was not protected, and like "he could get to [her]." Carrol tried to blame someone else for the overdose and claimed it could not be proved he had given her something. When other customers came into the store, Carrol left with his companions.

The next day Carrol again came into the store while A.M. was working. He approached the counter where A.M. was assisting a customer. A.M. testified that Carrol seemed "paranoid," "a little sweaty," and "almost a little hysterical." She claimed he called the detectives "crazy" for trying to charge him in relation to the overdose. The customer who A.M. was assisting when Carrol came in asked her if this was true, and A.M. confirmed that it was. The customer left the store momentarily. While Carrol was alone with her he asked, "[A]re you going to testify against me in court, are you seriously going to do that," and he became "pushy." The customer then reentered the store with her boyfriend, Travis. Carrol accused Travis of being a cop. Travis replied to Carrol that he was not and that "it's time for you to leave." A.M. also told Carrol, "I think it's time for you to leave." Carrol patted Travis on his way out of the store and left. A.M. testified that she found this intimidating.

Carrol visited her two more times but never said anything in subsequent visits. A.M. testified that Carrol knew "he shouldn't be bothering me" and "every time just by [Carrol] showing up I felt that it was intimidation, . . . he was being aggressive." She tesified she felt concerned for her personal safety. On December 4, A.M. contacted Sergeant Hill to make him aware of Carrol's contact

with her. In response, Sergeant Hill applied for an arrest warrant for witness tampering; Carrol was later charged by trial information.

After the State presented its case in chief, Carrol moved for judgment of acquittal,[2] arguing that "the State has not presented sufficient evidence that Mr. Carrol engaged in any acts that satisfy the evidence of the offense charged." Carrol claimed the State had not proved beyond a reasonable doubt that he acted without legitimate purpose because there was no law or authority prohibiting Carrol from contacting A.M. Similarly, Carrol claimed the State had not proved beyond a reasonable doubt that he initiated contact "with the intent to threaten, intimidate or alarm" because the State's evidence did not objectively show he had the intent to intimidate A.M. Finally, Carrol claimed the State failed to show beyond a reasonable doubt that he acted in retaliation for something A.M. lawfully did because the evidence shows Carrol "had no idea what [she] had done."

The court held there was no evidence to support the harassment alternative for tampering with a witness but denied the motion regarding other statutory alternatives in the tampering section. *See* Iowa Code § 720.4.[3] The court looked

---

[2] At trial, Carrol characterized the motion as one for a directed verdict; we treat this as a motion for judgment of acquittal. *See State v. Adney*, 639 N.W.2d 246, 249 n.2 (Iowa Ct. App. 2001).

[3] Iowa Code section 720.4 states:

> A person who . . . makes any threats toward [any person who they believe has been or may be summoned as a witness in any judicial or arbitration proceeding, or any legislative hearing] or who forcibly or fraudulently detains or restrains such person, with the intent to improperly influence such witness . . . with respect to the witness' . . . testimony or decision in such case, or to prevent such person from testifying . . . in such case, or who, in retaliation for anything lawfully done by any witness . . . in any case, harasses such witness . . . , commits an aggravated misdemeanor.

at "the evidence most favorable to the non-moving party, that being the State in this case."

Carrol rested without presenting evidence and renewed the motion for a judgment of acquittal on the same grounds as his first motion. The court denied Carrol's renewed motion because the court's "review of the code section is that there are several alternatives," and the first alternative is a threat towards a witness, which was separate from the "harass" alternative.

The jury found Carrol guilty of tampering with a witness, an aggravated misdemeanor.

Carrol moved for new trial, claiming the jury was exposed to unauthorized information when the court included the entire language related to the charge from the trial information on the cover page of the instructions. This included the harassment alternative for tampering, despite the fact the court had already ruled there was not sufficient evidence to submit the alternative to the jury. In support of his motion, Carrol had a juror testify about the jury deliberations. The juror testified that the jury considered the word "harassment" included in the trial information, listed on the cover sheet of the jury instructions, when it reached its decision as to Carrol's guilt. Yet, upon cross-examination by the State, the juror testified that the jury considered all of the instructions in their deliberations. Additionally, the State resisted the motion because the cover page was not a jury instruction, the other instructions indicated that the trial information is not evidence, and the instruction setting out the elements of the crime was accurate. The State also pointed out that Carrol had not objected to the language on the cover page. The court denied the motion for new trial because the marshalling instruction was

molded to the specific theory of threat and the court could not "base this motion on one juror's testimony as to maybe utilizing some language in the cover page, because it's clear the instruction said the trial information is not to be considered."

## II.    Discussion.

### A. Sufficiency of the Evidence.

The State concedes Carrol was not required to preserve error on his sufficiency-of-evidence challenge.  *State v. Crawford,* 972 N.W.2d 189,194 (Iowa 2022).  "We review a sufficiency-of-evidence claim for correction of errors at law." *State v. Copenhaver*, 844 N.W.2d 442, 449 (Iowa 2014).

Carrol argues the State presented insufficient evidence for the jury to convict him of tampering with a witness.  Specifically, Carrol claims there was insufficient evidence to find that he made a threat to A.M.  "In reviewing challenges to the sufficiency of evidence supporting a guilty verdict, [we] consider all of the record evidence viewed in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence." *State v. Reed*, 875 N.W.2d 693, 704 (Iowa 2016) (citation omitted).  We do not resolve conflicts in the evidence, decide the credibility of witnesses, determine plausibility, or weigh the evidence; those matters are for the jury. *See State v. Musser*, 721 N.W.2d 758, 761 (Iowa 2006).  "A jury verdict finding of guilt will not be disturbed if there is substantial evidence to support the finding." *State v. Robinson*, 859 N.W.2d 464, 467 (Iowa 2015).  "Evidence is substantial when the quantum and quality of evidence is sufficient to 'convince a rational fact finder that the defendant is guilty beyond a reasonable doubt.'" *State v. Banes*, 910 N.W.2d 634, 637 (Iowa Ct. App. 2018) (citation omitted).

Jury instructions not objected to at trial become the law of the case for purposes of reviewing the record for sufficiency of the evidence claims. *State v. Canal*, 773 N.W.2d 528, 530 (Iowa 2009). The State had the burden to prove all of the following to properly convict Carrol of tampering with witness:

> 1. On or about the 29th day of November through the 4th day of December, 2023 [Carrol] made a threat towards [A.M.]
> 2. [Carrol] did so believing [A.M.] may be summoned as a witness in a judicial proceeding.
> 3. [Carrol] had the intent to improperly influence [A.M.] with respect to her testimony or to prevent her from testifying.

Another instruction defined the term "threat" for the jurors.

> "Threat" is defined as an expression of an intention to inflict evil, injury or damage on another.
> This usage suggests the focus in determining whether a threat has been made is upon the actions of the person expressing or uttering his or her intention to inflict evil, injury or damage.

*See State v. Bartilson*, 382 N.W.2d 479, 481 (Iowa Ct. App. 1985) (citation omitted) (holding sufficient evidence of a threat even though no words stated a precise intent to inflict injury because the appellant conditioned return of the witness's son on the witness dropping the charges). Carrol's sole contention is that he did not make a threat towards A.M. "because the statements to [A.M.] did not convey a serious expression of intent to cause harm." He argues he contacted her "out of concern for a friend who overdosed" and to learn what was going on with the police.

In reviewing for substantial evidence of a threat, we focus on the actions of Carrol. *See State v. Welborn*, 443 N.W.2d 72, 74 (Iowa Ct. App. 1989).

Contrary to Carrol's position, the record includes substantial evidence that a rational juror could rely on to conclude he made a threat toward A.M. First, Sergeant Hill testified the day Carrol was released from custody, he made remarks

about A.M. and how his case was connected to her. With his knowledge that she was a witness against him, Carrol's several trips to A.M.'s workplace could be viewed as an attempt to threaten her to improperly influence her such that she would not testify. On the same day he was released on bond, Carrol visted A.M. at her place of work and immediately approached her. Carrol appeared "[a]lmost like he was losing it." Carrol's comments that he told his lawyer "that [A.M. and Carrol] were friends and that [A.M.] would not testify against him and that the detectives were crazy for blaming him for an overdose" could be viewed as imposing pressure on A.M. to comply. A.M. understood his statements that "it's not like she's an informant, it's not like she's wearing a wire" to suggest she was not protected and Carrol could get to her, and a rational jury could have understood them the same way. Then, Carrol claimed it could not be proved he had given her something. He only left when other customers came into the store.

On top of that, Carrol approached her again the following day at her place of work and asked if she was "seriously" going to testify against him. His demeanor prompted another customer to return to the store with her boyfriend, at which point Carrol's voice got higher and he accused the boyfriend of being a cop. Carrol left the store after the boyfriend and A.M. asked him to, but then he returned to A.M.'s workplace two more times in the subsequent days.

While Carrol did not explicitly threaten to harm A.M., a rational jury could conclude that Carrol intended to imply adverse consequences for A.M. if she testified against him. *See, e.g.*, *State v. Leavengood*, No. 15-0603, 2016 WL 4543620, at *2 (Iowa Ct. App. Aug. 31, 2016) (concluding there was substantial evidence of a threat when the defendant sent emails referring to the victim as a

"snitch" and cited the fact that she got "cops involved," among others). Plus, Carrol's action of repeatedly showing up at A.M.'s job could be viewed as menacing. *See State v. Cruzen*, No. 23-1361, 2024 WL 5153097, at *3 (Iowa Ct. App. Dec. 18, 2024) (finding substantial evidence of a threat when "the context was menacing" because the defendant "called . . . from a restricted number in the early morning hours"). Looking at the totality of Carrol's behavior, substantial evidence supports the threat alternative of tampering with a witness.

**B. Jury Instruction Challenge.**

Carrol complains that the jury was given the improper information about the elements of tampering with a witness as included in the trial information. This included language about the harassment alternative found on the cover page of the jury instructions even though the district court had already determined that the State failed to present evidence to satisfy that alternative. While the issue stems from the instructions given to the jury, Carrol argues he preserved error because he complained to the district court in a motion for new trial after the jury returned a guilty verdict. *See* Iowa R. Crim. P. 2.24(2), (4), (5).

The State contests error preservation; it maintains that Carrol's challenge to the jury instructions was not properly preserved as Carrol did not object to the jury instructions before they were submitted to the jury. Objections to jury instructions "shall be made and ruled on before arguments to the jury," and shall specify "the matter objected to and on what grounds. No other grounds or objections shall be asserted thereafter, or considered on appeal." Iowa R. Civ. P. 1.924; *see also* Iowa R. Crim. P. 2.19(4)(g) ("The rules relating to the instruction of juries in civil cases apply to criminal cases."); *Anderson v. Anderson Tooling,*

*Inc.*, 928 N.W.2d 821, 828 (Iowa 2019) (holding the appellant waived their right to appeal the jury instructions because they did not object to the jury instructions prior to closing arguments). "[T]imely objection to jury instructions in criminal prosecutions is necessary in order to preserve any error thereon for appellate review." *State v. Taggart*, 430 N.W.2d 423, 425 (Iowa 1988).

We agree with the State. The trial information included all alternatives involved with the charge, including the harassment alternative, but the court concluded that alternative would not be submitted to the jury. But, prior to instructions being submitted to the jury, Carrol was on notice that the language he argued was improper was to be included in the jury instructions. The court and parties discussed the instructions and gave Carrol an opportunity to object on the record. Despite this opportunity, Carrol failed to timely object and instead, objected to the cover page to the instructions for the first time in his motion for a new trial. This objection was not timely and was too late to preserve error. Because Carrol failed to preserve error, we will not consider the merits of this claim.

## III.     Conclusion.

Carrol failed to preserve his objection to the instruction cover page that included charging alternatives from the trial information, so we do not consider that challenge. And because the verdict was supported by substantial evidence, we affirm Carrol's conviction of tampering with a witness.

**AFFIRMED.**